**UNITED STATES**

v.

**Staff Sergeant Marco A. ROBLES, United States Air Force.**

**ACM 33394.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 15 Dec. 1997.

Decided 16 Aug. 2000.

784

Appellate Counsel for Appellant: Jim Darnell (argued), Colonel Theodore J. Fink, Colonel Douglas H. Kohrt, Colonel Jeanne M. Rueth, Major Thomas R. Uiselt, and James F. Maus.

Appellate Counsel for the United States: Major Karen L. Manos (argued), Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, Major J. Robert Cantrall, Major Jennifer R. Rider, and Captain Bradley D. Anderson.

Before SNYDER, Chief Judge, SCHLEGEL, Senior Judge, and BURD, Appellate Military Judge.

## OPINION OF THE COURT

SCHLEGEL, Senior Judge:

Contrary to his pleas, the appellant was convicted of committing forcible sodomy against his stepdaughter, and indecent acts against his daughter and stepdaughter in violation of Articles 125, 134, UCMJ, 10 U.S.C. §§ 925, 934. Both victims were under 16 years old. He was acquitted of the rape of an airman. Officer and enlisted members sentenced him to a dishonorable discharge, confinement for 7 years, forfeiture of all pay and allowances, and reduction to E–1. The convening authority approved the adjudged sentence. Appellant has assigned twelve errors for our review. We modify one of the findings of guilty but affirm the remainder of the findings and sentence.

### I. Admission of the Appellant's Acts of Domestic Violence

Prior to entering pleas, the appellant submitted a motion *in limine* to prevent the prosecution from admitting evidence of appellant's domestic violence against his wife, Donna Robles, and his former wife, Angela Crist. Defense counsel asserted the uncharged misconduct was irrelevant to any of

the charges and specifications, could not be linked to any of the Mil.R.Evid. 404(b) exceptions, and was only going to be used to paint the appellant as a bad person. Trial counsel argued the evidence was necessary to explain the delayed reporting of the crimes by EF, appellant's stepdaughter, and BR, his daughter. The military judge withheld ruling on the motion until a foundation was established.

Later during the trial in an Article 39(a), UCMJ session, Donna Robles and Angela Crist testified about the assaults and threats the appellant committed against them when EF or BR was present. After cross-examination, defense counsel argued the testimony was irrelevant, that no evidence had been presented about any fear on the part of the children, and delayed reporting had not been raised. After hearing this evidence and conducting the required balancing under Mil. R.Evid. 403, the military judge overruled the objection and allowed both women to testify about the domestic violence and threats appellant made against them while the children were present.

BR testified she was "scared" of the appellant because she saw him fight with Donna Robles.[1] EF testified the appellant was mean and yelled a lot but she could not identify any specific incident. The children's therapists testified each child had concerns about her safety, which explained their delay in reporting the sexual abuse. EF's therapist also reported EF had concerns for her family's safety in view of the appellant's violent behavior towards Donna and his threats.

The military judge instructed the members before deliberations on findings that,

Evidence that the accused physically abused Donna Robles by holding a gun to her head and by pushing her on both occasions in the presence of her children, and Angela Crist by holding a gun to her head, by holding a knife to her throat while holding [BR], and by driving at a high rate of speed on one occasion while [BR] was in the car may be considered by you for the limited purpose of its tendency, if any, to establish the observations of the children alleged to be victims in Charge II and III for the purpose of evaluating whether there was parental coercion or duress in the offense in the specifications of Charge II and to rebut the contention of improper motive or influence regarding the allegations of [EF] and [BR]. You may not consider this evidence for any other purpose, and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and that he, therefore, committed the offenses charged.

Before us, the appellant renews the arguments he raised at trial. The government contends the children were afraid of appellant because of these incidents and this accounted for the delay in reporting the crimes and reluctance to testify against him.[2]

### Standard of Review

■ We review a military judge's admission of evidence pursuant to Mil.R.Evid. 404(b) for an abuse of discretion. *United States v. Acton,* 38 M.J. 330, 332 (C.M.A. 1993); *United States v. Swenson,* 51 M.J. 522, 524 (A.F.Ct.Crim.App.1999); *United States v. Henley,* 48 M.J. 864, 871 (A.F.Ct. Crim.App.1998). "[A] military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Ayala,* 43 M.J. 296, 298 (1995). Relevant evidence of other crimes need not exactly fall under one of the "pigeon holes" described under Mil.R.Evid. 404(b), so long as the evidence is offered for some purpose other than the accused had a propensity to commit the offense. *Acton,* 38 M.J. at 333; *United States v. Hughes,* 48 M.J. 700, 712 (A.F.Ct.Crim.App.1998), *aff'd,* 52 M.J. 278 (2000). In *United States v. Reynolds,* 29 M.J. 105, 109 (C.M.A.1989) (citations omitted), our superior court estab-

1. Later, Elizabeth Bryan, a child protective services supervisor who conducted a forensic interview with BR, testified that BR said her mother informed her about these incidents.

2. At the time of trial EF was 11 and BR was 8. EF first reported the crimes on 10 October 1996. BR reported in February 1997. The offenses against the children were alleged to have occurred between 1 May 1995 and 31 October 1996.

lished a three-part analysis for the admissibility of uncharged misconduct evidence:

1) Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs, or acts?

2) What "fact....of consequence" is made "more" or "less probable" by the existence of the evidence?

3) Is the "probative value ... substantially outweighed by the danger of unfair prejudice"?

### Analysis

The testimony of Donna Robles and Angela Crist about the assaults and threats the appellant committed against them in the presence of the children was undisputed. Thus, the first standard of the *Reynolds* test is satisfied.

We next examine whether evidence of the appellant's domestic violence had relevance independent of the bad acts. The appellant's defense was he did not commit the offenses against the children. He contended EF lied about him because he was strict with her about schoolwork and extra-curricular activities. He also charged her allegations against him grew each time she was interviewed. He argued BR's allegation was the product of what she was told by her mother about EF and the result of all the investigative interviews and therapy.

In *United States v. Powers*, 59 F.3d 1460 (4th Cir.1995), Grady Powers was convicted of ten counts of engaging in sexual acts with a person under the age of twelve in violation of 18 U.S.C. § 2241(c). His daughter, Brandi, testified he would assault her with a belt, a hickory stick, or his hands three or four times a day for no reason. She also said Powers hit her mother and once knocked her brother off the porch with a two-by-four. According to her, Powers threatened to set fire to the house with his children and wife inside. Her brother gave similar testimony. Their mother also testified Powers frequently beat her and their children. Like the appellant, Powers asserted he never sexually assaulted his daughter and the testimony concerning the physical abuse of his family was erroneously admitted in violation of Federal Rule of Evidence 404(b). The Fourth Circuit found,

[t]he general relevance of this evidence to the sexual abuse is clear to us. Evidence of the beatings of both Brandi and her family provides a cogent explanation for Brandi's failure to report the sexual abuse for almost eighteen months. Thus evidence of the beatings makes it more probable that Brandi failed to report the sexual abuse not because it never took place, but because of her fear of retribution.

*Id.* at 1465. We agree with this analysis.

In *Powers*, the victim was physically abused *and* observed the abuse of her sibling and mother. In the case *sub judice*, there was conflicting testimony about whether the victims actually observed the violence or were made aware of the appellant's acts by their mothers. We find this factual distinction insignificant. The victims' fear of the appellant was based upon their knowledge this domestic violence occurred. Whether that knowledge came from personal observation or reports from their mothers, it explained their reluctance in reporting his sexual abuse of them. Although appellant claims he never raised the issue of delayed reporting, his opening and closing statements clearly imply this is one of the reasons for the members to be suspicious of the victims' statements. Furthermore, we see no reason why the prosecution must wait to introduce evidence of what would normally be seen as counterintuitive behavior. This evidence was also relevant on the issue of their submission to his indecent acts and to rebut appellant's assertions concerning their motive to lie. Therefore, the circumstances surrounding the children's reporting, including their fear of the appellant, was a fact of consequence in the trial. While this evidence should not have been offered until after the victims and therapists testified, the early admission did not affect its admissibility.

The military judge conducted the required balancing and limited the members' use of the evidence in her instructions on findings. The military judge did not abuse her discretion in admitting this evidence for this limited purpose.

## II. Admission of Appellant's Statement to Anne Shreve

Appellant moved to suppress the testimony of Ms. Shreve about statements he made to her. Appellant testified he never made the statements. In the alternative, he argued if these statements were made, they violated his rights under the Fifth and Sixth Amendments of the United States Constitution. The military judge, after hearing all the evidence, allowed Ms. Shreve's testimony.

Ms. Shreve was employed by the Hampton, Virginia, Department of Social Services, Child Protective Services (CPS). She interviewed EF on 10 October 1996. That same day or the next day, local police questioned the appellant. He provided them with a written statement, in which he said on one occasion while playing with EF he got an erection that fell out of his shorts. He also told the police he was ashamed and wanted to tell EF and his family he was sorry. He was confined in city jail in Hampton, Virginia, and arraigned on either 11 or 14 October 1996. Counsel was appointed for him at that time. A few days later, Ms. Shreve went to the jail to see appellant. She testified the Commonwealth of Virginia requires her to contact an alleged perpetrator, verbally and in writing, about the allegation. Prior to seeing the appellant, she talked to Detective Pat Orr who conducted the interview with the appellant. Detective Orr told Ms. Shreve not to interview appellant because he had been formally charged.

Ms. Shreve met with appellant in a holding area of the jail. She introduced herself and identified where she worked. Ms. Shreve told him about EF's allegations and informed him he did not have to talk to her. Appellant said he knew he did not have to speak to her and refused the CPS pamphlet she offered him. Appellant then inquired if EF's allegations would affect his visitation or contact with BR. Ms. Shreve told him she did not know. She asked if he needed anything and how he was feeling because she was aware of appellant's history of depression and suicidal ideation. Appellant replied he was not going to harm himself but asked for Ms. Shreve's assistance in getting civilian clothes, money,

stamps, and stationery from his wife. After Ms. Shreve told him she would help, appellant became tearful and stated he loved his wife and was really sorry for what happened. Appellant then said he became aroused playing with the children and did not know what to do. Appellant told her about the occasion when his penis popped out of his pants. He admitted he needed help, but feared he would get into trouble because a counselor would most likely report him. Shortly afterward, Ms. Shreve left the holding area.

Appellant's recollection of the conversation differed significantly from Ms. Shreve. He testified telling Ms. Shreve he could not discuss any issues with her without his attorney. Despite this comment, appellant said Ms. Shreve asked him about his statement to the police.[3] He denied Ms. Shreve asked him if he needed anything, but admitted she inquired about his mental health. He denied telling Ms. Shreve anything about the incident with EF or that he was sorry.

In denying the motion, the military judge found Ms. Shreve was acting as a social worker, not an investigator. She also found Ms. Shreve's visit with appellant was not an interrogation. The military judge determined there was no evidence to support a violation of appellant's Fifth or Sixth Amendment rights.

### Standard of Review

■ We review the military judge's findings of fact on a motion to suppress under a clearly erroneous standard, her conclusions of law *de novo*, and test for an abuse of discretion. *Ayala*, 43 M.J. at 298. We also review *de novo* the question of whether an interrogation has occurred. *United States v. Young*, 49 M.J. 265, 267 (1998) (citing *United States v. Kosek*, 41 M.J. 60, 63 (C.M.A.1994)).

### a. Fifth Amendment

■ The Fifth Amendment to the United States Constitution provides no person can be compelled to be a witness against himself in any criminal case. The judicially created rule requiring exclusion of coerced

---

**3.** The appellant did not contest the admissibility of this statement.

statements from admission into evidence in violation of the Fifth Amendment was announced by the Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In a case involving continuous custody, when an accused has invoked his right to counsel, government officials may not reinitiate custodial interrogation without counsel being present, regardless of whether the accused has consulted with counsel. *Minnick v. Mississippi,* 498 U.S. 146, 153, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). "There is no per se rule for delineating when non-police government questioning comes within *Miranda;* rather the courts have tended to view each case in light of the totality of its circumstances to determine whether impermissive coercion has occurred or continued." *United States v. Mitchell,* 51 M.J. 234, 238 (1999) (citations omitted). However, courts have consistently held an alleged child abuser is not entitled to *Miranda* warnings from a social worker in a non-custodial setting. *State v. P.Z.,* 152 N.J. 86, 703 A.2d 901 (1997); *Hennington v. State,* 702 So.2d 403 (Miss. 1997); *Commonwealth v. Berrio,* 407 Mass. 37, 551 N.E.2d 496 (1990); *State v. Sprouse,* 325 S.C. 275, 478 S.E.2d 871 (App. 1996). *But see State v. Helewa,* 223 N.J.Super. 40, 537 A.2d 1328 (App.Div. 1988); *Commonwealth v. Ramos,* 367 Pa.Super. 84, 532 A.2d 465 (1987) (citing *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968)). Of course, this appellant was in custody.

### b. Sixth Amendment

■ The Sixth Amendment to the United States Constitution provides in all criminal prosecutions an accused shall enjoy the right to the assistance of counsel. Once the Sixth Amendment right to counsel has attached, law enforcement officials may not interrogate a defendant unless counsel is present or the defendant expressly waives his right to the assistance of counsel. *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). "The Sixth Amendment does not preclude all people from communicating with criminal defendants who have invoked their right to counsel

after the adversarial process has begun. Rather, it is 'the prosecutorial forces of organized society' and their minions who are barred from initiating contact at that point." *United States v. Moreno,* 36 M.J. 107, 118 (C.M.A.1992) (citations omitted).

The Supreme Court defines interrogation as "express questioning or its functional equivalent." *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). In applying this definition, we evaluate the actions of the police using an objective standard. *Id.* at 301–02, 100 S.Ct. 1682; *United States v. Meeks,* 41 M.J. 150, 161 (C.M.A.1994). The term functional equivalent refers "to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Young,* 49 M.J. 265, 267 (1998) (quoting *Innis,* 446 U.S. at 300–01, 100 S.Ct. 1682). In Sixth Amendment cases, the Supreme Court has defined interrogation as conduct by law enforcement officials designed to deliberately elicit incriminating information. *Brewer,* 430 U.S. at 399, 97 S.Ct. 1232.

### Analysis

This case emphasizes the observation of our superior court in *Moreno,* 36 M.J. at 112.

> When people abuse children in this society, two distinct processes are triggered. One is the criminal process, which focuses on the proper way to deal with the perpetrator. The other is the child-protective process, which focuses on the preservation of and best interests of the child-victim.

These are legitimate interests of the state but they often collide. The testimony of Ms. Shreve serves as a perfect example of these competing state interests from the perspective of a CPS worker.

> I see myself working for the safety of the child and the family. And often, we, we do not have a child abuse team at Hampton. We don't have any formalized team like other jurisdictions. We try to call ourselves a team, but it's never been formalized. We don't have a chairman, we don't have monthly meetings. We don't do anything like that. We often are in conflict

with the Commonwealth Attorney. We're often in conflict with the police. And that has been historical. And that's why they try to get us to be more of a team effort, because we often don't see cases the same way. But I am required by law to cooperate and share information with our Commonwealth Attorneys, with the police department. I could get fired if I didn't do that. Just like I'm required, if a defense attorney calls me and wants to talk with me, I'm required to cooperate with them. I'm in a balancing act in my job all the time.

In Virginia, CPS is the state agency responsible for receiving and investigating child abuse and neglect complaints. Va. Code. Ann. § 63.1–248.6(A) (Michie 1997). When abuse or neglect is suspected in six categories of cases, including any sexual abuse, CPS must immediately notify the attorney for the Commonwealth and the local law enforcement agency. Va.Code. Ann. § 63.1–248.6(E)(5) (Michie 1997). Virginia courts have not squarely addressed whether a social worker is part of the prosecution. However, in a case involving a defendant's entitlement to discovery under state law, the Court of Appeals of Virginia found "employees of DSS [Department of Social Services] involved in the investigation of the child abuse allegation were agents of the Commonwealth for purposes of Rule 3A:11(b)(2)." *Ramirez v. Commonwealth*, 20 Va.App. 292, 456 S.E.2d 531, 533 (1995).

Nevertheless, even if we were to conclude, for purposes of the Sixth Amendment, that Ms. Shreve should be viewed as part of the prosecution, we still must decide whether her conduct was "designed" to elicit an incriminating response from the appellant. After reviewing the testimony of the appellant and Ms. Shreve, we agree with the findings of the military judge that Ms. Shreve did not ask the appellant any questions about the allegations but simply inquired about his health and personal situation. Contrary to the appellant's assertion, we find no evidence that Ms. Shreve's intent in meeting with or offering to help him was to elicit incriminating statements. It would be a dangerous prece-

dent to conclude that inquiring about a suspect's health, or offering help in response to his own request amounts to the functional equivalent of questioning, or represents a form of coercion which *Miranda* and Article 31 seek to prohibit.

Finally, even if we were to find Ms. Shreve violated appellant's Fifth or Sixth Amendment rights, we find the admission of this evidence was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Bins*, 43 M.J. 79, 86 (1995) (citations omitted). Appellant voluntarily told Ms. Shreve essentially the same information he gave to police about the incident with EF. Appellant knew he did not have to talk to Ms. Shreve. He has not claimed he believed his statements to Ms. Shreve were confidential. *Compare Ramos*. There is no credible evidence Ms. Shreve interrogated appellant and the questions she did ask were not designed to elicit incriminating statements from him. Appellant felt abandoned by his wife and feared he would be unable to see his natural daughter. As a consequence, he became emotional and vented his frustrations. Appellant was looking for sympathy and help. He also knew he was telling Ms. Shreve something he had already told the police.

The findings of fact by the military judge were not clearly erroneous and she did not abuse her discretion in permitting Ms. Shreve to testify. We find Ms. Shreve did not violate the appellant's Fifth and Sixth Amendment rights because she did not interrogate him.

### III. Admission of Evidence Pursuant to Mil.R.Evid. 801(d)(1)(B)

The appellant argues the military judge erroneously admitted statements EF made to Ms. Shreve and Prosecution Exhibit 8 under Mil.R.Evid. 801(d)(1)(B).[4]

#### Standard of Review

Our standard on review is whether the military judge abused her discretion in admitting this evidence. *United States v. Alli-*

---

4. The military judge cited more than one rule for admission of some of this evidence.

son, 49 M.J. 54, 57 (1998); *United States v. Redmond,* 21 M.J. 319 (C.M.A.1986).

Mil.R.Evid. 801(d)(1)(B) provides in pertinent part as follows:

> A statement is not hearsay if ... the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication *or* improper influence *or* motive[.]

(Emphasis added.)

This rule is taken from Fed.R.Evid. 801(d)(1)(B) without change. Drafters' Analysis, *Manual for Courts–Martial (MCM), United States* A22–49 (1995 ed.). In *Tome v. United States,* 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), the Supreme Court interpreted the federal rule to require that a prior statement, admitted as substantive evidence, precede any motive to fabricate or improper influence that it is offered to rebut. Our superior court has consistently applied our rule in this manner. *See Allison,* 49 M.J. at 57. In the event it is alleged a witness has multiple motives to fabricate or multiple improper influences, the prior consistent statement need not precede all such motives or inferences, but only the one it is offered to rebut. *Id.* (citing *United States v. Morgan,* 31 M.J. 43, 46 (C.M.A.1990)). *See United States v. Faison,* 49 M.J. 59 (1998). This rule, as applied in the federal courts and courts-martial, "reflects the common law view that someone who repeats the same story over and over is not necessarily likely to be more truthful than someone who speaks just once." Stephen A. Saltzburg, et al., *Military Rules of Evidence Manual* 906 (4th ed.1997). However, the rule may be used to rebut specific allegations about witness testimony.

---

5. Appellant has not raised this as error.

6. The statement provided,

> He stick his prifite [sic] in my moth [sic] when I was trying to take a nap. He put his prifite

## Analysis

In opening statement defense counsel, in part, talked about what happened after EF reported her allegations.

> The police swooped down and interviewed her. Social workers, child protective people, counselors, all swooped down on [EF] grilling her, what did he do? What did he do? What did he do? What did he do? After all of this drilling, the story just keeps growing and growing and growing, and becomes out of control.

In discussing BR's allegations, defense counsel reiterated this theme.

> [BR]'s allegation came only after months and months of therapy. Questioning by investigators. Questioning by therapists. Questioning by folks you're going to see in here. It was only after that length of time did she say, "He touched my private." That was the watershed. "He touched my private."

EF testified via closed circuit television.[5] Even with this accommodation, her testimony can best be described as typical of a child who was both scared and reluctant to be a witness. During direct examination, she reviewed a statement she gave to Detective Orr, written in her own handwriting, to refresh her recollection. The statement detailed her allegations.[6] She read the statement and testified it was true. After EF was done testifying, the prosecution offered the statement under Mil.R.Evid. 803(24) and appellant objected. The military judge ruled,

> Well, I'll tell you what, I think it falls under 801(d)(1), Subsection (B). I'm going to admit it under 801(d)(1), Subsection (B). I'll also admit it under 803(24), and let me tell you why, counsel. I've heard testimony throughout the course of this proceeding regarding taint caused by a statement by repeating the story over and over and over again. I've heard that with a number of witnesses on cross-examination which I think constitutes an attack on the wit-

[sic] in my prifite [sic] and it hrts [sic] reall [sic] reall [sic] bad. He puts his prifite [sic] on my but [sic]. He jumps on me. He put my hand on his prifite [sic] and moves it a ralled [sic].

nesses' testimony under the theory of improper influence, that is, having repeatedly told the story; and this document is consistent with the declarant's testimony in court through videotape camera and is admissible under, I believe, under 801(d)(1). I mean, the cookie baking thing aside, I think that the testimony that's been offered through witnesses on cross-examination clearly has raised an issue of whether or not this child's testimony has been fabricated, not based on a motive because she couldn't be a cheerleader, but because she's been interviewed and re-interviewed and interviewed again. And this appears to be the first statement that she made to a police officer, and, therefore, I believe it falls under 801(d)(1), Subsection (B), and that's where my analysis lies. Do you want to comment on that?

When neither side commented, the military judge continued.

Okay, so it's my issue is not, or my concern is not—where I conduct the analysis dealing with 801(d)(1)(B) is with respect to the issue that has been raised as to whether or not the repeated report of this conduct has caused her to fabricate testimony. I believe that's where the attack falls in. That's why I think it falls under 801(d)(1)(B), not your attack—there are several attacks on recent fabrication or improper motive or influence here. I want to make sure it's clear in your mind so that you have the chance to respond to it, you know, that that's the one that I'm looking at as opposed to any others.

After EF testified, the prosecution recalled Ms. Shreve to the stand. During an Article 39(a) session, Ms. Shreve testified what EF told her during an interview on 10 October 1996. This included that the appellant placed his privates on her butt. The prosecution offered the testimony under Mil. R.Evid. 803(24). The military judge ruled EF's statement to her during the interview was admissible under the residual hearsay exception and Mil.R.Evid. 801(d)(1)(B). With regard to Mil.R.Evid. 801(d)(1)(B), the military judge found EF's statement to Ms. Shreve admissible because it rebutted an express or implied charge of recent fabrication,

improper influence, or motive. She based this ruling on defense counsel's opening statement to the members and his cross-examination of Donna Robles about the number of times EF was interviewed.

In her closing instructions on findings, the military judge told the members, if they determined EF's statements to Detective Orr and Ms. Shreve were consistent with her testimony at trial, they could use them to refute the charge of improper motive or recent fabrication and consider them for the truth of the matter asserted.

■ Mil.R.Evid. 801(d)(1)(B) clearly provides a prior consistent statement can be offered to rebut three express or implied allegations that the witness' testimony was (1) a recent fabrication; (2) improperly influenced by another person or event, or (3) motivated by some bias or prejudice. We interpret the *Faison, Allison,* and *Morgan* analysis to mean each of the enumerated allegations is independent for the purposes of the rule. Therefore, we must first examine the allegations raised by appellant.

a. Recent Fabrication

■ Defense counsel expressly charged, even before EF testified, the story she would tell had grown over time. Appellant's cross-examination of EF and other witnesses accentuated how often she had been interviewed. Although not specific about what aspects of EF's testimony differed from her initial statements, the unmistakable message injected by the appellant into the proceeding from the outset was her testimony at trial included facts which she had not told anyone before and that she added new facts or allegations after each interview or therapy session. We find this raised the claim of recent fabrication. *United States v. Jones,* 26 M.J. 197, 200 (C.M.A.1988).

b. Improper Influence

Our superior court has held that allegations of improper influence can be raised when counsel repeatedly emphasizes a witness has told her story "over and over again." *Morgan,* 31 M.J. at 46. This is exactly what occurred in appellant's trial.

The thrust of appellant's cross-examination of the investigators and therapists was that, each time they talked with EF, their questions suggested answers or facts about what he did to her. Appellant also argued that after she told the investigators and therapists what they wanted to hear, they provided positive reinforcement by sympathizing or agreeing with her. In effect, he argued they coached her to lie.

### c. Motive

Appellant alleged his discipline and treatment of EF prompted her to lie in order to get him out of the house. He claimed this idea was conceived when EF and a friend conspired to report the friend's grandmother to social services because the grandmother was "mean."

We must look to see if the evidence admitted by the military judge preceded and rebutted these allegations. At the outset, it is readily apparent none of EF's prior statements preceded appellant's charge regarding motive to fabricate. Therefore, the military judge erred by admitting EF's statements to Detective Orr and Ms. Shreve for the purpose of rebutting this alleged motive. Analysis of the allegations of recent fabrication or improper influence is more difficult because appellant's charges were a broadside attack. However, sometimes you reap what you sow. Instead of focusing on the issue of motive, appellant said her story grew with each and every interview or therapy session. The plain implication of this is every therapist or investigator contributed to the fabrication of EF's testimony and also influenced her. In view of that sweeping attack, we believe her prior statements, if found by the members to be consistent with her testimony, logically rebutted these allegations under the rule. This is especially true because Prosecution Exhibit 8 was written in EF's own hand and Ms. Shreve was only the second person to interview her. Like Chief Judge Cox in *Faison*, we wish the military judge would have "differentiated somewhat between the multiple defense assertions." 49 M.J. at 63. However, the appellant's tactics in this case made that almost impossible.

The military judge correctly admitted EF's prior written and oral statements to Detective Orr and Ms. Shreve under Mil.R.Evid. 801(d)(1)(B) to rebut appellant's charge of recent fabrication and improper influence. The decision to also admit the statements to rebut appellant's charge of motive was erroneous but resulted in no prejudice.

### IV. Admission of Evidence Pursuant to Mil.R.Evid. 803(3) and 803(24)

The appellant has alleged the military judge erred by admitting into evidence out-of-court statements made by EF and BR to a variety of witnesses.

#### Standard of Review

Our standard on review is whether the military judge abused her discretion. *Allison*, 49 M.J. at 57; *United States v. Powell*, 22 M.J. 141 (C.M.A.1986).

Mil.R.Evid. 803(3), provides, in pertinent part, "A statement of the declarant's then existing state of mind ... but not including a statement of memory or belief to prove the fact remembered or believed ..." is not excluded by the hearsay rule. This rule is taken from the Federal Rules verbatim. *MCM*, A22–51. A victim's out-of-court statement regarding her fear of an accused is admissible as an exception to the hearsay rule. *United States v. Elmore*, 33 M.J. 387, 396 (C.M.A.1991). However, the conduct that serves as a basis of that fear is not admissible under the rule. *Id.*

Mil.R.Evid. 803(24) provides, in pertinent part,

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

This rule is taken without change from the Federal Rules. *MCM*, A22–53.

Hearsay evidence is generally barred from admission at trial because it is

an out-of-court statement that does not permit an accused to confront the declarant. However, "where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." *White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). When the declarant is unavailable and the hearsay does not fall within a firmly rooted exception to the hearsay rule, this reliability can be established by showing the statement is supported by "particularized guarantees of trustworthiness" for admission of the statement. *Idaho v. Wright,* 497 U.S. 805, 815, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (citations omitted); *United States v. Hughes,* 52 M.J. 278 (2000). The trustworthiness of the statement must be shown from the totality of the circumstances that surround its making without regard to other corroboration. *Wright,* 497 U.S. at 819, 110 S.Ct. 3139. The Supreme Court specified the following factors were relevant when considering statements made by children: (1) spontaneity and consistent repetition; (2) mental state of the declarant; (3) use of terminology unexpected of a child of similar age; and (4) lack of motive to fabricate. *Id.* at 821, 110 S.Ct. 3139 (citations omitted). However, if confrontation is satisfied, corroborating evidence beyond the circumstances surrounding the declaration may be considered. *United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988); *United States v. McGrath,* 39 M.J. 158 (1994). When hearsay is improperly admitted, we must determine whether or not the error was harmless. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

### Analysis

a. Testimony of Donna Robles

 Donna Robles testified she married the appellant in January 1995, and at the time EF made the allegations against appellant, they were happily married. She testified on the night EF approached her she was supposed to go to a meeting and EF would have been in the house with the appellant. When she started to describe what EF told her, defense counsel objected. Trial counsel argued the testimony was admissible under Mil.R.Evid. 803(2), excited utterance. The military judge excused the members. Donna testified EF told her the last incident of indecent acts occurred approximately two weeks ago. After hearing Donna's testimony, the military judge ruled the statement was admissible under Mil.R.Evid. 803(3) because it went to EF's mental state. She also ruled it was admissible under 803(24) but did not indicate her rationale under this rule. Donna then testified what EF told her. She also testified EF never complained to her about appellant's treatment of her vis-a-vis the other children. On cross-examination, defense counsel questioned her extensively about the different people and number of times EF was interviewed.

We find the military judge erred by admitting the testimony under Mil.R.Evid. 803(3). This rule does not permit a statement of memory or belief to prove the fact remembered or believed. EF's statement to her mother did not reveal her then existing state of mind, emotion, sensation or physical condition. If EF told her mother she was afraid to be alone with the appellant or her genitals hurt, these statements would qualify under the rule. EF's nervous laugh, her attempt to pass a note to her mother, and her serious demeanor when they were alone were admissible. However, EF's statement's describing the abuse amounted to a memory. *United States v. Joe,* 8 F.3d 1488, 1492–93 (10th Cir.1993).

 Appellee urges us to sustain the military judge's decision under this rule because EF's statement to her mother was a fresh complaint. *See MCM,* A22–51. We have extended the principle of fresh complaint to Mil.R.Evid. 803(3) and child abuse victims. *United States v. Lingle,* 27 M.J. 704, 708 (A.F.C.M.R.1988). However, evidence of fresh complaint is not an exception to the prohibition against hearsay but a rule providing corroboration for a victim's claim of lack of consent. *United States v. Sandoval,* 18 M.J. 55, 64 (C.M.A.1984) (citations omitted). Consent was never an issue in this case. Further, there was no evidence EF was in a state of "shock, outrage, agony and resentment" when she told her mother about appellant's acts. *Id.* at 66 (quoting *United States*

*v. Thompson,* 3 M.J. 168, 170 (C.M.A.1977)). We reject appellee's argument on this point.

Our review of the military judge's decision admitting this testimony under Mil.R.Evid. 803(24) is complicated by a complete lack of findings by her on the record. Nevertheless, we can evaluate the materiality, necessity, and reliability of the evidence. *United States v. Kelley,* 45 M.J. 275, 280 (1996). The statement was material. Furthermore, based upon all the circumstances surrounding the making of the statement that night, we also find it possesses sufficient guarantees of trustworthiness for admission under the rule. Normally, a child does not feel the need to use a written note to request a meeting with her mother. She was nervous, as evidenced by her mother's testimony concerning her demeanor. After they were alone, EF felt safe enough to tell her mother what the appellant did to her. The statement was voluntary and unprompted. EF was motivated by the fact her mother was leaving the house that night. Further, EF's description of appellant's acts was consistent with a child of her age.

 The real issue on this assertion of error is necessity because Donna testified before EF took the stand. "[T]he residual-hearsay exception to the Military Rules of Evidence is 'intended to apply [only] to highly reliable and necessary evidence.'" *United States v. Giambra,* 33 M.J. 331, 334 (C.M.A. 1991) (quoting Stephen A. Saltzburg, et al., *Military Rules of Evidence Manual* 659 (2d ed.1986)). Our superior court has offered that the necessity requirement should be interpreted liberally because of the exceptional circumstances that generally exist when a child victim relates to an adult the details of the crime. *Kelley,* 45 M.J. at 280. Unfortunately, we cannot ignore the fact the victim had not testified or been found unavailable within the meaning of Mil.R.Evid. 804 when this testimony was admitted. Therefore, we find the military judge erred in admitting EF's statement to her mother about appellant's acts.

b. Ms. Shreve

 After Ms. Shreve testified about the appellant's statements, trial counsel questioned her about EF's statements to her. When defense counsel objected, trial counsel argued the testimony was admissible under Mil.R.Evid. 803(4) or 803(24). The military judge sustained the objection, because EF had not testified.

After EF testified, the prosecution recalled Ms. Shreve. During an Article 39(a) session, she testified about what EF told her during an interview on 10 October 1996. The military judge ruled EF's statements to her during the interview were admissible under Mil.R.Evid. 803(24) and 801(d)(1)(B). The military judge based her decision to admit Ms. Shreve's testimony under Mil.R.Evid. 803(24) on three factors: EF testified at trial; she was distraught during her interview with Ms. Shreve which the judge felt undercut her motive and ability to lie; and the statement to Ms. Shreve was consistent with Prosecution Exhibit 8.[7]

We find this ruling to be erroneous. This statement was not spontaneous like the statement to her mother. It took place in a police station and EF was asked questions. Ms. Shreve did not administer an oath to EF or inquire whether EF knew the difference between the truth and a lie. Like the military judge, she assumed EF was telling the truth because she was upset. While acknowledging confrontation was satisfied because EF testified, all these facts taken together call into question the trustworthiness of the statement under the analysis required by the rule. Moreover, it was not necessary because the military judge admitted EF's handwritten statement to the police describing what the appellant did to her in her own words.

c. Elizabeth Bryan

 After BR testified, Elizabeth Bryan was called as a witness by the prosecution. At the time of trial, she was the supervisor of a CPS investigative team in Virginia Beach, Virginia. However, when she interviewed BR on 20 February 1997, she was employed by the Child Abuse Center of Hampton

---

7. The military judge admitted EF's written state- ment to investigators earlier in the trial.

Roads. She testified BR was referred by her regular therapist, Elaine Whitaker, because BR was exhibiting "red flag behaviors of abuse or neglect" which she had not been able to discuss in therapy. Ms. Bryan said the purpose of her interview was "fact finding" and it was limited in duration to about an hour. Ms. Bryan explained to BR that she talked with children who might be having problems and a difficult time talking about them with other people. Defense counsel objected when trial counsel inquired what BR told her. After the members were excused, trial counsel argued the testimony was admissible under Mil.R.Evid. 803(4) and 803(24). The military judge ruled Ms. Bryan's testimony was not admissible under the medical treatment exception. However, she found the testimony was admissible under Mil.R.Evid. 803(24). Ms. Bryan said BR told her the appellant drank beer, fought with her mother, spanked her too hard, and touched her vagina with his hand. BR also said the appellant told her to lie and say her stepfather touched her vagina, not the appellant. During cross-examination, Ms. Bryan testified she did not have any discussion with BR about the difference between the truth and a lie. BR's statement to Ms. Bryan was the first time she told anyone the appellant touched her vagina. She did not disclose this information to her mother or therapist until after this interview.

The military judge's decision to admit BR's statements to Ms. Bryan about the appellant touching her vagina was erroneous. BR's statement about the touching was not spontaneous. Although her mannerisms changed when discussing the touching, there was no evidence BR was emotional during the interview. Even though this was a fact-finding interview, Ms. Bryan did not discuss the difference between the truth and a lie with BR during the interview.

d. Elaine Whitaker

Ms. Whitaker became BR's therapist in November 1996, and by the time of trial, had seen her 20 to 24 times. When she first saw her, Ms. Whitaker told BR she was going to help her. After a few sessions, Ms. Whitaker became convinced that a forensic interview was necessary because of BR's behavior.

However, she decided to wait for a period of time before requesting the interview because BR's father figures were absent. (Appellant was in jail and her stepfather was on temporary duty.) Once the stepfather returned and BR had a positive response to their reunion, Ms. Whitaker formally requested the forensic interview. Ms. Whitaker testified BR did not report the abuse sooner because she did not feel safe. She also testified that approximately three months after BR's disclosure to Ms. Bryan, BR told her appellant touched her vagina and was angry with her because she had not lied about it. Defense counsel did not object to this testimony.

The trial defense counsel's failure to object to this evidence constitutes waiver of the objection in the absence of plain error. Mil.R.Evid. 103(a)(1). The Supreme Court's test for plain error is: (1) there is an error; (2) the error is plain (clear or obvious); and (3) the error affects a substantial right of the accused. *United States v. Olano*, 507 U.S. 725, 733–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Our test for plain error is similar to *Olano* except with regard to the harm suffered by the appellant. Before us, an appellant must demonstrate the error materially prejudiced a substantial right. *United States v. Powell*, 49 M.J. 460, 464 (1998). *See* Article 59(a), UCMJ. We interpret this to mean the harm to an appellant was so significant as to influence the outcome of the trial. *United States v. Jackson*, 52 M.J. 756 (A.F.Ct.Crim.App.2000).

The appellant's plain error argument fails because he has not shown the admission of BR's statements to Ms. Whitaker was erroneous. Defense counsel aggressively contested the admission of evidence throughout the trial. In the absence of an objection concerning BR's statements to Ms. Whitaker, it is natural for us to at least consider the possibility that defense counsel believed the testimony was admissible under Mil.R.Evid. 803(4). At their initial session, she informed BR she was going to help her and would listen to anything BR had to say. She also testified BR was still her patient. The rules require an objection to evidence so we can evaluate the facts and the judge's ruling

based on the record of trial. Without a record we are forced to speculate about the thoughts or motive of the parties. We find no plain error under these facts.

### e. Prosecution Exhibit 8

■ We have already determined this exhibit was admissible under Mil.R.Evid. 801(d)(1)(B). Moreover, we find it was also admissible under Mil.R.Evid. 803(24). The statement was both material and necessary because of EF's testimony. She testified the statement was true and was subject to cross-examination. The statement was written in her own hand and it is obvious from the misspellings these were her own words. Under these circumstances, we find the statement to be trustworthy.

### f. Prejudice

■ Because the military judge erroneously admitted hearsay statements from both children, we must determine whether appellant suffered any prejudice. The analysis we must conduct is found in *United States v. Weeks*, 20 M.J. 22, 25 (C.M.A.1985).

First: Is the Government's case against the accused strong and conclusive? *United States v. Lewis*, 482 F.2d 632, 644 (D.C.Cir.1973).

Second: Is the defense's theory of the case feeble or implausible? *United States v. Lewis, supra* at 646.

Third: What is the materiality of the proffered testimony?

Fourth: What is the quality of the proffered defense evidence and is there any substitute for it in the record of trial?

(Footnote omitted.)

We previously determined EF's statement to Ms. Shreve was admissible under another rule, therefore, no prejudice inured to appellant as a result of our finding it was not admissible under Mil.R.Evid. 803(24).

■ We also find the appellant suffered no prejudice from the admission of EF's statement to her mother. The specification alleging indecent acts against EF was based upon her testimony and statements, and the admissions of appellant. He told police investigators, on one occasion while playing with her, he became sexually aroused and his erect penis popped out of his shorts. He said he was ashamed and confused by this and wanted to tell EF and his family that he was sorry. After this occurred, he said he stayed away from her. He spontaneously told the same story to Ms. Shreve. Although EF's testimony could have been more descriptive, the prosecution's case on this specification was strong and conclusive. Appellant's defense was implausible. Ostensibly, EF's motivation for falsely accusing appellant was his insistence that improving her grades came before any other activities and he treated BR differently. Appellant also claimed EF was inspired by a friend who was going to report her grandmother to social services. However, EF's mother testified she never complained about appellant's treatment of her. Appellant also told police investigators he could not think of any reason that EF would lie about him. Appellant presented no evidence that EF or her friend ever made a complaint about the friend's grandmother. Further, we find appellant's attempt to stretch this discussion between EF and her friend about the "mean" grandmother into a false claim that he committed sexual abuse is simply not credible. Additionally, there was no evidence of any marital discord between appellant and EF's mother despite the domestic violence. EF's statement to her mother was not used in a material way by the prosecution and as we've noted, had the statement been introduced after EF testified, our view of its admissibility would be different. Finally, this evidence was cumulative of other evidence introduced at trial.

The last analysis in this section focuses on the military judge's erroneous admission of BR's statement to Ms. Bryan about appellant's indecent assault. Although the military judge erred by admitting this statement under Mil.R.Evid. 803(24), it was admissible under Mil.R.Evid. 801(d)(1)(B) as a prior consistent statement. This was her initial statement to anyone that appellant touched her vagina and made it red. As such, it rebutted his assertions that her testimony was influenced and fabricated as the result of her subsequent therapy and interviews with in-

vestigators. Therefore, we find the appellant was not prejudiced by its admission.

## V. Discovery

Appellant claims trial counsel's failure to inform his attorneys prior to trial that BR told them appellant touched her in a hotel room violated his Fifth Amendment due process rights and R.C.M. 701(a)(6)(A) because it was evidence that tended to negate his guilt.

### Standard of Review

 The prosecution's failure to disclose material evidence favorable to an accused, when properly requested, violates an accused's due process right to a fair trial. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Eshalomi,* 23 M.J. 12 (C.M.A.1986). This rule encompasses impeachment evidence. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Watson,* 31 M.J. 49, 54 (C.M.A. 1990). In *Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the Supreme Court specified three elements for a violation of *Brady:* (1) the evidence, either exculpatory or impeachment, must be favorable to the accused; (2) it must have been suppressed by the prosecution; and (3) the accused must be materially prejudiced.

The Supreme Court's test for materiality is,

The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). We look at the totality of the circumstances to determine the possibility of a different outcome in the trial.

 There is "a heavier burden on the Government" in the military than imposed upon civilian prosecutors "to sustain a conviction" when evidence has been withheld from an accused. *Eshalomi,* 23 M.J. at 24. *See*

*also United States v. Meadows,* 42 M.J. 132, 137 (1995) (citations omitted). Article 46, UCMJ, 10 U.S.C. § 846 mandates this generous rule of discovery. As a result, when testing for materiality, we resolve the benefit of any reasonable doubt in favor of an appellant. Therefore, if we have a reasonable doubt as to whether the result of the court-martial would have been different, if the evidence had been disclosed, we must grant relief. *Watson,* 31 M.J. at 55.

### Analysis

 Appellant was charged with committing indecent acts on BR at or near Hampton, Virginia. Until shortly before trial, both parties thought BR would say this incident occurred in a house. However, during an interview with the prosecution, BR indicated appellant assaulted her in a hotel. Based upon their conversation with BR and her mother, the prosecution viewed this as a separate incident. They decided not to amend the specification in order to allege appellant committed indecent acts on divers occasions. Further, it appears they had no intent to solicit this information at trial. Appellant was not informed of this information or decision. At trial, BR testified appellant touched her in a hotel and nowhere else.[8] Defense used this inconsistency during cross-examination of BR, Ms. Whitaker, and in closing argument.

We find there is no reasonable probability that if this evidence had been disclosed to appellant prior to trial, the result of the proceeding would have been different. Appellant was not charged with committing indecent acts in a specific structure. Rather, he was charged with committing the offense in a general geographical location. BR's description of the room most closely describes visiting quarters or temporary lodging on an Air Force base. In a windfall for appellant, the military judge instructed the members this was a prior inconsistent statement. Appellant never requested a delay in the trial after BR testified in order to search for evidence to show the appellant never stayed

---

8. She testified one of the things in the room where the touching occurred was a toy box with her toys in it.

in temporary quarters during the charged time period.

## VI. Remainder of Assigned Errors

We agree with appellant that the evidence is factually insufficient to sustain his conviction for placing his hand upon her BR's buttocks. However, we affirm his conviction for the remaining language in Specification 2 of Charge III. The remainder of appellant's assigned errors are resolved against him and do not merit comment.

## VII. Conclusion

We modify the findings of guilty on Specification 2 of Charge III, by excepting the words "buttocks and" from the specification. Though we are modifying this specification, we find the approved sentence appropriate for appellant's crimes involving these children. *United States v. Peoples*, 29 M.J. 426, 427 (C.M.A.1990); *United States v. Sales*, 22 M.J. 305, 307–308 (C.M.A.1986). The remainder of the findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Accordingly, the findings as modified, and sentence are

AFFIRMED.

Chief Judge SNYDER [9] and Judge BURD concur.