UNITED STATES, Appellee,

v.

James A. ALLISON, Sergeant,
U.S. Army, Appellant.

No. 97–0179.
Crim.App. No. 9501520.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 4, 1997.

Decided Sept. 22, 1998.

For Appellant: *Captain Angelines McCaffrey* (argued); *Colonel John T. Phelps II, Lieutenant Colonel Michael L. Walters,* and *Major Leslie A. Nepper* (on brief); *Captain Mark I. Goodman.*

For Appellee: *Captain Elizabeth N. Porras* (argued); *Colonel Joseph E. Ross* and *Lieutenant Colonel Frederic L. Borch, III* (on brief); *Captain Robert F. Resnick.*

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, on mixed pleas, of failure to repair, willfully disobeying a superior commissioned officer (2 specifications), making a false official statement, and sodomy (2 specifications), in violation of Articles 86, 90, 107, and 125, Uniform Code of Military Justice, 10 USC §§ 886, 890, 907, and 925, respectively. The victim of the sodomy offenses was appellant's step-son, ST. Appellant also was charged with assaulting ST, in violation of Article 128, UCMJ, 10 USC § 928, but he was acquitted of that offense.

The court-martial sentenced appellant to a dishonorable discharge, confinement for 20 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence but granted

appellant 100 days of credit toward his confinement. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ALLOWING UNDER MIL.R.EVID. 801(d)(1)(B) A VIDEOTAPED INTERVIEW OF THE ALLEGED VICTIM TO BE SHOWN TO THE MEMBERS AS A PRIOR CONSISTENT STATEMENT WHERE THE EVIDENCE WAS OBJECTED TO AND WHERE THE VIDEOTAPE WAS NOT MADE PRIOR TO THE IMPROPER INFLUENCE OR MOTIVE TO FABRICATE.

We hold that the military judge did not abuse his discretion.

### Factual Background

The prosecution relied heavily on the testimony of ST to prove the sodomy offenses. Appellant testified in his own defense and repeatedly denied having any sexual contact with ST. The defense strategy was to discredit ST's testimony.

In March 1987, while stationed in Germany, appellant met and married his wife, a German national. She had a son, ST, who was 1½ years old at the time of the marriage. In 1989 they moved from Germany to Fort Campbell, Kentucky. In 1992 they returned to Germany.

In November 1994, ST, then 9 years old, told a classmate and a teacher that appellant had sexually abused him. On November 30, 1994, ST repeated his accusations in a videotaped interview by a school social worker, Ms. Darla Sims. Immediately after his interview with Ms. Sims, ST was interviewed by an agent of the U.S. Army Criminal Investigation Command (CID), Special Agent (SA) Fitzgerald.

ST also was interviewed by a child psychiatrist, Major (MAJ) Perotta, M.D., who had "six or seven" sessions with ST and used "talk therapy" as well as "play therapy." During cross-examination of MAJ Perotta, defense counsel explored the possibility that ST was influenced by leading questions during the investigation of his accusations. Defense counsel also suggested the possibility that ST had lied and persisted in the lie to please others because they, especially his mother, encouraged him to adhere to his accusations.

On his own motion, the military judge excluded the interview by SA Fitzgerald because the questioning was too leading and conclusory. The granted issue concerns only admissibility of the videotaped interview by Ms. Sims.

One theory advanced by the defense was that ST's mother initially did not believe ST's accusations, but then saw an opportunity to manipulate ST so that she could establish grounds for divorce, obtain a monetary settlement, gain custody of the children, and avoid returning to the United States. As the trial progressed, defense counsel also suggested that other adults "caused [ST] to reinforce a story that he made up," and that under adult questioning ST adhered to his story but "just changed details." At one point defense counsel suggested that ST had been influenced by trial counsel's pretrial interview.

ST's trial testimony about appellant's sexual abuse was specific and certain, but he appeared confused about what was happening to his family. ST testified that appellant performed anal sodomy on him three times, once while they were living in the United States and twice in Germany. ST testified that he was 5 or 6 years old the first time. ST also testified that appellant made him perform oral sodomy "many times" in the United States and Germany.

On cross-examination, ST testified that he and his mother (then appellant's wife) did not want to go back to the United States. Apparently referring to a psychiatric interview in December 1994, ST testified that he told the military psychiatrist, MAJ Perrota, that he did not want to go back to the United States "because for what my dad had done to me." He testified that his mother wanted to divorce appellant. He also testified that his

mother told him that he would not have to go to the United States. He denied that his mother told him that they were going to the United States.

Defense counsel also elicited that ST had seen two boys trying to have intercourse with their little sister and performing oral sodomy on each other. ST admitted playing "fake sex" with his younger sister. He denied watching appellant's pornographic videos.

Defense counsel attempted to pin down the time when ST learned that his mother intended to divorce appellant. ST testified that his mother said nothing about a divorce, but that she received a letter from appellant saying that he was taking their daughter away. When defense counsel asked ST if he learned about the letter before he was interviewed by Ms. Sims (the social worker) or anyone else, ST responded that it was "during." He explained: "Like during what was going on and then when I didn't have to go to anybody about this then I told Brian and Brian told some of his friends in fifth grade or sixth grade." Defense counsel did not attempt to further clarify ST's testimony.

ST indicated that he was more concerned with the break-up of his family than with staying in Germany. He testified that he did not report appellant's abuse earlier because "my dad was still with my mom in the house" and "he can like take my mom away if I tell somebody and he starts knowing." ST testified that, after Mrs. Allison (appellant's ex-wife) received the letter from appellant in mid-November, he was concerned that appellant might take his sister away and leave him and his mother behind. He tried to explain: "[B]ecause then I started knowing why he wanted to take her away, because she's brown and I'm white and my mom's white and my—and he only wanted to take my sister and—I'm kind of confused."

Mrs. Allison testified that she was divorced from appellant the Friday before the trial "[b]ecause of what—what I think had happened to my son." She had decided earlier that she did not want to live with appellant, but she did not file the divorce action until January.

Mrs. Allison testified that, when ST first reported appellant's abuse in late November or early December, she did not believe him. She gave the CID a sworn statement saying that she did not believe him.

On cross-examination, Mrs. Allison testified that she saw Ms. Sims on November 18 and told her that she was afraid appellant might be upset if he found out that she wanted a divorce. This conversation was before ST accused appellant of sodomy.

Mrs. Allison testified that she told her children, including ST, that appellant wanted custody of the children, but she denied telling them that they might have to return to the United States.

Mrs. Allison testified that ST frequently misbehaved, told lies, and stole "small things." She testified she told CID that ST lies and "fantasizes." She testified that she saw ST watching appellant's pornographic videotapes at least twice. She testified that, on one occasion, she saw ST and his sister "playing sex." ST was on top of his sister with his pants down. She testified that she knew ST had seen two of his friends "trying to sex their sister" and sucking each other's penis.

Mrs. Allison testified that ST told her nothing about appellant's sexual abuse. When ST complained that "his butt hurt," she told him, "You probably have to use the bathroom." She testified that she, ST, and her daughter wanted to go back to the United States. Before ST made his allegations, she had already decided to leave appellant.

Appellant testified that, on or about November 14, 1994, he returned home from a field training exercise and found a note on his car that his wife had left him and had taken the children. Appellant hired a German lawyer, with a view toward gaining custody of the children. He testified that Mrs. Allison was aware of his desire for custody before ST made his accusations. Appellant testified that he was unaware of his wife's desire for a divorce until January 1995, when he was served with legal documents in which his wife asked for a divorce on the ground that he had sexual intercourse with ST. The divorce was granted on June 2, 1995. Mrs.

Allison was given custody of the children and all the furniture, and appellant was ordered to pay her 1600 German marks per month.

Trial counsel offered the videotaped interview of ST by Ms. Sims to rebut the defense assertion that ST's testimony was the product of Mrs. Allison's manipulation. The military judge admitted the videotaped interview as a prior consistent statement under Mil. R.Evid. 801(d)(1)(B), Manual for Courts–Martial, United States (1995 ed.), and *United States v. Morgan*, 31 MJ 43, 46 (CMA 1990). Appellant now asserts that the military judge erred.

### Discussion

■ Mil.R.Evid. 801(d)(1)(B) provides in pertinent part as follows:

A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]

This rule is taken from Fed.R.Evid. 801(d)(1)(B) without change. Drafters' Analysis of Mil.R.Evid. 801(d)(1)(B), Manual, *supra* at A22–49. This Court has consistently interpreted the rule to require that a prior statement, admitted as substantive evidence, precede any motive to fabricate or improper influence that it is offered to rebut. *See United States v. Taylor*, 44 MJ 475, 480 (1996); *United States v. Morgan, supra; United States v. McCaskey*, 30 MJ 188, 192 (CMA 1990). Where multiple motives to fabricate or multiple improper influences are asserted, the statement need not precede all such motives or inferences, but only the one it is offered to rebut. *United States v. Morgan, supra; see United States v. Faison*, 49 MJ 59 (1998). This interpretation of the rule is consistent with the Supreme Court's decision in *Tome v. United States*, 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). The pivotal issue in this case is whether ST's

statement to Ms. Sims was made before any—but not necessarily all—of the motives to fabricate or improper influences asserted by the defense arose.

■ A military judge's decision to admit or exclude evidence is reviewed for abuse of discretion. The military judge found that "there has been an implied, as well as expressed, indication in this case that [ST]'s testimony may have been the result of improper influence or motive, at a minimum, to prevent himself from going back to the States or being separated from his family." The military judge also took note of several other possible motives to lie and improper influences, including: (1) influence exerted by Mrs. Allison before November 30 to provide grounds for divorce; (2) a "vendetta" by ST to retaliate for appellant's strict discipline; (3) an unduly suggestive interview by SA Fitzgerald; (4) coaching or influence by others, including trial counsel, after the interview with Ms. Sims; and (5) coaching or influence by others between the investigation under Article 32[1] and the trial, resulting in discrepancies between ST's Article 32 testimony and his trial testimony.

The military judge made no express findings of fact regarding the prosecution's theory of admissibility—that Mrs. Allison did not believe ST's complaint but decided to exploit it at some time after the interview by Ms. Sims to provide grounds for divorce. On the other hand, he did not reject the prosecution's theory. Instead, the military judge ruled merely that, under *Morgan*, "the tape in this case ought to come in."

We hold that the interview by Ms. Sims was admissible to rebut the "express or implied charge" that ST persisted in a false accusation and embellished the details because various persons coached him or exerted improper influence on him after he was interviewed by Ms. Sims. The videotaped statement to Ms. Sims rebutted the suggestion that, although Mrs. Allison may not have believed ST when he first made his accusation, she later encouraged him and exploited his complaint in order to have grounds for a divorce. The statement also rebutted the

1. Uniform Code of Military Justice, 10 USC § 832.

suggestion that trial counsel may have shaped ST's testimony between the Article 32 investigation and the trial. Because ST's statement to Ms. Sims preceded these two alleged improper influences, the statement was admissible to rebut appellant's claim that ST was lying at trial. Accordingly, we hold that the military judge did not abuse his discretion by admitting the videotaped interview with Ms. Sims.

*Decision*

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges SULLIVAN, CRAWFORD, and EFFRON concur.