UNITED STATES, Appellee,

v.

Jamie A. FAISON, Private First Class, U.S. Army, Appellant.

No. 97–0571.
Crim.App. No. 9401898.

U.S. Court of Appeals for the Armed Forces.

Argued Dec. 18, 1997.

Decided Sept. 22, 1998.

For Appellant: *Captain Arden B. Levy* (argued); *Colonel John T. Phelps II* and *Lieutenant Colonel Michael L. Walters* (on brief); *Major Michael E. Hatch.*

For Appellee: *Captain Mary E. Braisted* (argued); *Colonel Joseph E. Ross, Lieutenant Colonel Frederic L. Borch III*, and *Captain Elizabeth N. Porras* (on brief).

*Opinion of the Court*

COX, Chief Judge:

A general court-martial with members convicted appellant of wrongful use of marijuana, indecent acts, and attempting indecent acts upon his 13–year–old stepdaughter, in violation of Articles 112a, 134, and 80, Uniform Code of Military Justice.[1] He appeals

---

1. 10 USC §§ 912a, 934, and 880, respectively. Appellant was sentenced to confinement for 3 years, total forfeitures, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged,

his conviction, asserting that the military judge erred by permitting one witness, Miss McFadden, to testify about hearsay statements of the victim. 48 MJ 16 (1997). We hold that the military judge did not err.

The victim in this case was the daughter of appellant's wife. The victim testified that appellant committed or attempted to commit indecent acts against her on numerous occasions, over a period of many months. On one particular occasion, on the evening of February 18, 1994, after the victim and appellant had argued, the victim became upset and ran upstairs. Her mother, who had already gone to bed, heard the victim go into the bathroom and close the door behind her saying, "I just want to get out of here."

Later that night, around 12:30 a.m. according to the victim's testimony, appellant came into her room and initially apologized to her for their fight. Then he fondled her.

The victim's mother had heard appellant coming up the stairs and heard him close the door to the master bedroom. When he did not come to bed in a reasonable time, she got up to investigate. Stepping into the hall, she saw him leave the victim's room and head back downstairs. She asked him why he was in there. He replied that he had heard a noise, and he kept on walking downstairs without looking up. When the mother peered into the room, the victim appeared to be asleep. The victim testified that she was pretending to be asleep when her mother looked in on her.

The next morning, appellant spontaneously stated to his wife, "[Y]ou got to check ... [the victim's] radio because it just popped on last night." The mother had not heard any radio or noise coming from the victim's room the night before. The victim also testified that her radio had not been on that night.

That same morning, the victim called a friend, R, and told her that appellant had been touching her. R invited the victim to come to her house. When she got there, the victim told both R and R's mother that appellant had been fondling her. Later, R's mother invited the victim's mother over so that

the victim could tell her in person about the fondling incidents.

Over the days and weeks that followed, the victim told various friends, investigators, and therapists about appellant's acts. Without objection by the defense, the victim and numerous of these third parties were permitted to testify about their post-offense conversations. None of these statements are in issue here.

The defense theory of the case was that the victim had made up the allegations as a way to get appellant out of her life. In this regard, the defense opening argument invited the members to closely scrutinize the victim's "credibility" and "inconsistencies between her testimony and other evidence that's presented in this case."

Developing this theme on cross-examination of the victim, defense counsel inquired about an incident that had allegedly occurred when the victim was 5 years old. At that time, the victim reported that she had been sexually assaulted by a boyfriend of her mother. The result of this report was that the victim never saw that boyfriend again. The defense implication, of course, was that the victim well knew that such an allegation, true or otherwise, could be effective in getting rid of appellant.

Defense counsel also inquired of the victim about the amount of housework, cooking, cleaning, baby-sitting, and other chores that appellant required her to perform, all of which left her little time to herself. Counsel then moved to the specific bases for the argument of February 18, 1994. Upon defense questioning, the victim denied recalling that she and appellant had argued about her chores and other responsibilities. She denied that the argument related to her not properly—in appellant's view—supervising her little brother by keeping him out of appellant's room. And she denied that it related to her not having cleaned the kitchen. The victim agreed, however, that appellant had gotten angry at her during the argument and told her she could not call her boyfriend (who had moved away some 4 days before).

and the Court of Criminal Appeals affirmed in an unpublished opinion.

Upon further questioning by the defense, the victim agreed that there were other times appellant punished her—unfairly in her view—by not letting her use the telephone or go outside. Counsel also suggested to the victim that she wanted to run away "because of that argument . . . [they] had that night," but she denied it.

On several occasions, counsel also suggested to the victim that her testimony had been shaped—after her initial accusation of appellant following the February 18 argument—by government counsel and a friend of the victim's mother.

When defense counsel's cross-examination of the victim concluded, trial counsel sought to question her on redirect about the contents of statements she had made to another friend—Miss McFadden—in August 1993 and January 1994. In these statements, the victim allegedly reported that appellant was "messing" with her. Trial counsel also proffered the testimony of Miss McFadden to the same effect. Defense counsel promptly objected to these statements as being hearsay, inadmissible under Mil.R.Evid. 801(d)(1)(B), Manual for Courts–Martial, United States (1995 ed.). It is the ultimate receipt in evidence of these August and January statements that is the subject of this appeal.

Mil.R.Evid. 801(d) provides:

A statement is not hearsay if:

> *(1) Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with the declarant's testimony and is offered **to rebut an express or implied charge** against the declarant of recent fabrication or improper influence or motive[.]

(Emphasis added.)

Trial defense counsel, citing *United States v. McCaskey,* 30 MJ 188, 192 (CMA 1990) ("to be logically relevant to rebut such a charge, the prior statement typically must have been made *before* the point at which the story was fabricated or the improper influence or motive arose"), argued to the mili-

tary judge that the victim's "motive to fabricate" arose as early as August 1993:

> Our position is that she was—she was upset with her father from August on. The first statement that we're going to hear is in September [*sic* ]; the motive to fabricate was before the statements that they're trying to get in and therefore it's not admissible under *McCaskey.*

*See also Tome v. United States,* 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995).

Thus, the situation was that the defense had attacked the witness on cross-examination and sought to impeach her by accusing her of all of the following: recent fabrication, improper influence, and improper motive. A great portion of this cross-examination plainly involved the implication that, as a result of events occurring on or after mid-February 1994, the victim had a motive or series of motives to testify falsely against appellant. Obviously, statements from January 1994 and August 1993, which were consistent with the witness's trial testimony, would have rebutted at least those claims of motive. The defense position, however, was that, by assigning one alleged improper motive to a point prior to the earliest of the corroborating statements, the defense could preclude government rehabilitation by statements which plainly rebutted the later defense assertions. *But see United States v. Morgan,* 31 MJ 43, 46 (CMA 1990) (where there are multiple influences, motives, or fabrications alleged, prior statements may rebut some, if not all, charges by party opponent).

 The focus of Mil.R.Evid. 801(d)(1)(B), however, is not when or even if a recent fabrication, improper influence, or improper motive occurred. The rule is concerned with rebutting the "express or implied charge," *i.e.,* accusation by a party opponent, that some such impropriety occurred. (Emphasis added.) Often, the very fact of improper motive, *etc.,* will be vigorously disputed, much less ascertainable as to precise moment of origination. Thus, the point in time to be ascertained for purposes of rebuttal is the fair implication of the charge, not the arguable underlying event. Here, for example, charges were made both

expressly by counsel to the judge and implicitly by counsel through cross-examination of the victim and others. As to *when* counsel was charging that the various recent fabrications, improper influences, or improper motives arose, there can be no dispute on this record.[2] Although it is tempting to answer this Mil.R.Evid. 801(d)(1)(B) claim, we do not do so because the military judge did not receive the evidence under that rule. Instead, in a possible windfall for the defense, the judge received the statements as a species of prior consistent statement. However, he would not allow them to be considered for the truth of the matters asserted, notwithstanding Mil.R.Evid. 801(d)(1)(B). As the judge explained, he received them nonsubstantively, as "rebuttal to the theory of the defense on the credibility of the victim who has been impeached on the cross-examination." *Cf. United States v. Taylor*, 44 MJ 475, 480 (1996). Such a theory of admissibility thus roughly parallels the limited use accorded prior consistent statements at common law and under the evidentiary rules preceding the Military Rules of Evidence. *See McCaskey, supra* at 191; para. 153a, Manual for Courts–Martial, United States, 1969 (Revised edition); *see generally United States v. Ellis*, 121 F.3d 908, 919–20 (4th Cir.1997); 5 J. Weinstein and M. Berger, *Weinstein's Federal Evidence* § 801.12[1] (2d ed.1998).

Consistent with this approach, the military judge gave an on-the-spot limiting instruction to the members that the evidence could not be used "for proof that any of the specifically charged offenses actually occurred." On the contrary, it could be used "only ... for a very limited purpose to assist you in trying to determine whether or not you should believe" the victim. A similar instruction was repeated during instructions on findings. In other words, the prior statements were not received for the truth of the matter asserted; they were only received as rebuttal evidence for their tendency, if any, to bolster the credibility of the witness whose credibility had been attacked. Thus, their admissibility is dependent on logical relevance for that purpose, not on an exception to the rule against hearsay.

■ Impeachment of a witness is, of course, perfectly permissible. Mil.R.Evid. 607. The party whose witness has been impeached, however, may seek to rehabilitate its witness. *McCaskey, supra* at 194 (Cox, J., concurring); *cf. United States v. Ellis*, 121 F.3d 908 (4th Cir.1997); *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721 (6th Cir. 1994); *United States v. Castillo*, 14 F.3d 802, 806 (2d Cir.1994).

The question is whether the earlier statements—that appellant had been "messing" with the victim—logically rebutted the assertions of recent fabrication, *etc.* Our standard of review is whether the military judge abused his discretion in receiving the August 1993 and January 1994 statements as rehabilitation evidence. *See United States v. Redmond*, 21 MJ 319, 326 (CMA 1986).

In the course of its impeachment of the victim, the defense implied, among other things, that her testimony had been improperly shaped after her initial report of the offenses. The defense also implied that she had lied about appellant's conduct, in part due to the argument that occurred on February 18, 1994. This argument, in turn, had consequences on the victim's ability to make long-distance telephone calls to her boyfriend, who had moved away a few days before, thus presumably giving her further cause for anger at appellant. As well, the defense implied that the victim had other reasons to dislike appellant, some of which may have arisen well before mid-February

---

**2.** Thus, assume a victim was fired from her job by her boss, the defendant. Assume further that, despising the defendant for firing her and being motivated solely by a desire for revenge, the victim falsely tells the police and several friends that the defendant assaulted her. At the ensuing criminal trial for assault, the victim so testifies, but is attacked by the defense with a charge of improper motive as a result of the firing. In order to "rebut" this in-court charge, the prosecutor offers the victim's prior statements—all of which were made after the victim's dismissal. Since the charge was that the victim's motive to harm the defendant preceded the making of the statements, the statements should be excluded. Had, however, the statements to the friends preceded the firing, they would have been admissible to rebut this particular charge.

1994. Under the circumstances, we are satisfied that the judge did not abuse his discretion in concluding that the earlier statements supported her in-court testimony.

In a perfect world, the judge might have differentiated somewhat between the multiple defense assertions. *Cf. Tome, supra* at 159; *United States v. McCaskey, supra.* Thus, while it appears quite clearly that the August and January statements rebutted (and preceded), for example, the implication that the victim's trial testimony was shaped as a result of her subsequent contact with trial counsel and others, it is perhaps less clear that the claim that she wanted appellant out of her life because he was a harsh taskmaster was similarly rebutted (or preceded) by those statements.

The defense, however, did not request such a narrowing instruction. Because the evidence was admissible, and because limiting instructions as to its use were provided, we find no plain error, if error at all, in the judge's failure to narrow the range of insinuations that were rebutted by the victim's prior statements. *See United States v. Godshalk,* 44 MJ 487 (1996).

The decision of the United States Army Court of Criminal Appeals is affirmed.

Judges SULLIVAN, CRAWFORD, GIERKE, and EFFRON concur.