# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant ROY S. TRIPP**
**United States Army, Appellant**

ARMY 20130683

Headquarters, 7th Infantry Division
David L. Conn, Military Judge (arraignment)
Stefan R. Wolfe, Military Judge (motions hearing)
Timothy R. Hayes, Jr., Military Judge (trial)
Lieutenant Colonel Michael S. Devine, Staff Judge Advocate (pretrial)
Colonel Robert F. Resnick, Staff Judge Advocate (post-trial)

For Appellant:  Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Captain Payum Doroodian, JA (on brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Major Daniel D. Derner, JA; Captain Christopher A. Clausen, JA (on brief).

30 March 2016

----------------------------------
SUMMARY DISPOSITION
----------------------------------

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of rape of a child and one specification of sodomy of a child in violation of Articles 120 and 125 of the Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 925 (2006) [hereinafter UCMJ].  The military judge sentenced appellant to a dishonorable discharge, twenty-eight years confinement, and reduction to the grade of E-1.  The convening authority approved the sentence as adjudged and credited appellant with six months of *Mason* credit towards his sentence to confinement.  *See United States v. Mason*, 19 M.J. 274 (C.M.A. 1985).

This case is before us for review pursuant to Article 66, UCMJ. Appellate counsel raises two assignments of error, both of which require discussion, one of which warrants relief. We find the issues raised by appellant, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) to be meritless.

## BACKGROUND

Appellant began raping his daughter, KT, when she was six years old. The rapes occurred when appellant's spouse, KT's step-mother, would leave KT alone in their home with appellant. On divers occasions over approximately a two-year period from May 2008 to May 2010 appellant inserted his penis into KT's vagina.

KT testified that in April 2012, her step-mother left her alone in the house with appellant. She testified that, on this day, while watching cartoons in the living room of appellant's home, appellant started "to put his balls inside [KT's] butt, but after a couple times he couldn't get in, but then one time [appellant] finally got it in, but then it kept slipping out after that." KT explained that "balls" referred to where appellant goes to the bathroom to "pee." KT testified appellant also put his finger inside "where she pees." When appellant stopped raping and sodomizing KT on this occasion, she saw "white stuff on the couch." She then went to the playground to play with friends.

At the playground, KT disclosed to a friend that she had sex with her father and she liked it, and that "white stuff came out of her butt." KT's friend told her parents - who called law enforcement authorities - leading to an immediate criminal investigation.

Law enforcement went to appellant's home and immediately removed KT from the home. She was taken to the hospital where she underwent a sexual assault forensic examination (SAFE). KT's clothes were also collected and tested for forensic evidence. When KT's panties were tested, appellant's sperm and DNA were found inside the crotch and buttocks area of the panties. The pattern of appellant's sperm on the panties matched the description given by KT of how appellant sexually assaulted her that day.

At trial, defense attempted to attack KT's credibility by raising prior inconsistent statements made by KT. To rebut defense's attack on KT, the government offered the testimony of Ms. KA, a child interviewer from the Pierce County Prosecutor's office. Ms. KA interviewed KT approximately a week after KT's initial disclosure to her friend on the playground. Over the objection of defense counsel, the military judge allowed Ms. KA's statement into evidence to rebut defense's assertion of recent fabrication of the sexual assault allegations by KT.

On appeal, in a headnote pleading void of any analysis, appellant submits that the military judge erred in permitting Ms. KA's testimony into evidence to rebut recent fabrication. Appellant now asserts the victim's motive to fabricate sexual assault allegations against appellant existed prior to her statements to Ms. KA and therefore are not prior consistent statements within the meaning of Military Rule of Evidence [hereinafter Mil. R. Evid.] 801(d)(1)(B). We disagree with appellant's view of the law based on the facts presented in this case.

## LAW AND DISCUSSION

### Prior Consistent Statement

Under Mil. R. Evid. 801(d)(1)(B), a prior consistent statement of a witness is "not hearsay. . . if offered to rebut an express or implied charge of recent fabrication or improper influence or motive." *United States v. Allison,* 49 M.J. 54, 57 (C.A.A.F. 1998) (quoting Mil. R. Evid. 801(d)(1)(B)). Military Rule of Evidence 801(d)(1)(B) contains several "inherent safeguards" that must be satisfied before prior statements will be admitted. *United States v. Hood*, 48 M.J. 928, 933 (Army Ct. Crim. App. 1998) (citing *United States v. McCaskey*, 30 M.J. 188, 191). "The rule's predicate safeguards are that the declarant must testify at trial and be subject to cross-examination; the statement must be consistent with the declarant's in-court testimony; and, the statement must be offered to actually rebut an attack of recent fabrication or improper motive or influence." *Id*.

However, "where multiple motives to fabricate or multiple improper influences are asserted, the statement need not precede all such motives or inferences, but only the one it is offered to rebut." *Allison*, 49 M.J. at 57; *see also*, *United States v. Faison*, 49 M.J. 59 (C.A.A.F. 1998).

At trial, defense argued under Mil. R. Evid. 403 that Ms. KA's testimony would be unduly prejudicial and was an unfair attempt by the government to bolster KT's testimony. While KT's motive to fabricate was raised by defense as part of the general defense strategy in the case, defense counsel did not assert KT's motive to fabricate predated her statements to Ms. KA when asked by the military judge during trial to provide a basis to exclude the evidence. In fact, the evidence elicited at the trial alluded to not only the fact that KT was under the improper influence of her mother while testifying at trial – but also that KT provided inconsistent statements to a defense counsel a few weeks before trial. Accordingly, defense counsel conceded at trial that they had raised prior inconsistent statements by KT. The military judge overruled defense counsel's objection and allowed Ms. KA's testimony into evidence to rebut defense's assertion of recent fabrication by KT.

In this case, Mil. R. Evid. 801(d)(1)(B) was not presented to the military judge as a basis to exclude Ms. KA's testimony at trial. In fact, multiple improper influences were asserted by the defense such that KT's statement to Ms. KA need "not precede all such motives or inferences, but only the one it is offered to rebut." *Allison*, 49 M.J. at 57; *see also*, *United States v. Faison*, 49 M.J. 59 (C.A.A.F. 1998). Consistent with the holding in *Allison*, we are hard-pressed to find error.

Assuming error, we find nothing that materially prejudices appellant's substantial rights. *See* UCMJ art. 59(a); *see also McCaskey*, 30 M.J. at 193. The evidence against appellant in this case, without regard to the prior statements to Ms. KA, was overwhelming.

*Dilatory Post-Trial Processing*

The convening authority took action 461 days after the sentence was adjudged, 356 of which are attributable to the government. The record in this case consists of seven volumes, and the trial transcript is 723 pages. Although we find no due process violation in the post-trial processing of appellant's case, we must still review the appropriateness of the sentence in light of the dilatory post-trial processing. UCMJ art. 66(c); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) ("[Pursuant to Article 66(c), UCMJ, service courts are] required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay."); *see generally United States v. Toohey*, 63 M.J. 353, 362-63 (C.A.A.F. 2006); *United States v. Ney*, 68 M.J. 613, 617 (Army Ct. Crim. App. 2010); *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000).

The government argues they were forced to rely on I Corps staff for processing court-martial transcripts and were operating on a skeleton staff due to the reactivation of 7th Infantry Division, thereby causing a transcription backlog. Despite the government's arguments, relief in this case is appropriate as the delay between announcement of sentence and action could "adversely affect the public's perception of the fairness and integrity of military justice system . . . ." *Ney*, 68 M.J. at 617. As such, we provide relief in our decretal paragraph.

**CONCLUSION**

Upon consideration of the entire record, the findings of guilty are AFFIRMED. Given the dilatory post-trial processing, we affirm only so much of the sentence as provides for a dishonorable discharge, twenty-seven years and eleven months confinement, and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision, are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge TOZZI and Judge CELTNIEKS concur.



FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court