*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

––––––––––––––

**UNITED STATES**
Appellee

**v.**

**Thomas AYALA, Staff Sergeant**
United States Army, Appellant

**No. 20-0033**
Crim. App. No. 20170336

Argued November 18, 2020—Decided March 5, 2021

Military Judges: Joseph A. Keeler and Jeffery R. Nance

For Appellant: *Captain Catherine E. Godfrey* (argued); *Colonel Michael C. Friess*, *Lieutenant Colonel Tiffany D. Pond*, *Major Jack D. Einhorn, Major Jodie L. Grimm,* and *Major Kyle C. Sprague* (on brief); *Captain Benjamin A. Accinelli* and *Captain Jason X. Hamilton*.

For Appellee: *Captain Christopher K. Wills* (argued); *Colonel Steven Haight, Lieutenant Colonel Wayne H. Williams,* and *Major Craig J. Schapira* (on brief).

Judge SPARKS delivered the opinion of the Court, in which Chief Judge STUCKY, Judge OHLSON and Senior Judge RYAN, joined. Judge MAGGS filed a separate concurring opinion.

––––––––––––––

Judge SPARKS delivered the opinion of the Court.

This case arises out of the conviction by military judge alone of Staff Sergeant Thomas Ayala (Appellant), contrary to his pleas, of two specifications of aggravated sexual contact in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2012).[1] Appellant was sentenced to a bad-conduct discharge and confinement for eight months. The convening authority approved the sentence. The United

---

[1] Appellant was also found not guilty of one specification of attempted sexual assault in violation of Article 80, UCMJ, 10 U.S.C. § 880 (2012).

States Army Court of Criminal Appeals affirmed the findings and sentence in a summary disposition.

Appellant asks this Court to determine whether the military judge erred in admitting evidence as prior consistent statements under Military Rules of Evidence (M.R.E.) 801(d)(1)(B)(i) and M.R.E. 801(d)(1)(B)(ii).[2] We conclude that, whether or not the evidence was erroneously admitted, Appellant was not prejudiced by the military judge's decision.

## I. Background

The charges in this case stem from an encounter between Appellant and Specialist AN, a female enlisted soldier. Appellant and AN were acquaintances who ran into one another on the evening of April 17, 2016. Appellant invited AN back to his living quarters and, though AN testified that she was hesitant to accompany him, she eventually did so.

AN testified that, once inside, she sat down on Appellant's bed. After about five minutes, he began trying to kiss her. She told him no and that she wasn't interested and tried to push him off. Appellant continued trying to kiss AN and attempted to take off her shirt. She testified that she kept wiggling away, trying to move his hands away, and saying no. Appellant continued trying to kiss AN and he held her hands down over her head and again tried to take off her shirt and then her bra. He also touched her breasts. Appellant attempted to pull down AN's pants and underwear and repeatedly reached his hands down the front of her pants. AN testified that she told Appellant she wanted to leave and he replied " '[y]ou're not leaving until I say you're leaving.' " When AN tried to get up off the bed he put her back down. She testified that she felt scared and vulnerable in the situation.

---

[2] The granted issue is:

> Whether the Military Judge abused his discretion in admitting the victim's prior consistent statements under Mil. R. Evid. 801(d)(1)(B)(i) AND 801(d)(1)(B)(ii).

Appellant's roommate at the time of the assault, Staff Sergeant JC, testified that he was present in the room for most of the time Appellant and AN were there, with the exception of a brief trip to the bathroom and then, fifteen minutes later, he walked to a separate location to watch a hockey game and was gone about twenty minutes. During some of that time he was engaged in a FaceTime call with his young daughter. There was an internal wall between Appellant's area of the quarters and JC's. JC testified that he perceived Appellant and AN as giggling and happy and that they were lying in the bed together. He did not hear AN say no or stop at any time. JC testified that he was annoyed that AN was there and made it clear she couldn't spend the night. AN testified that much (though not all) of what occurred between her and Appellant happened once JC had left the room and that when JC asked if she was staying the night she clearly told both JC and Appellant that she was not.

AN eventually got up off the bed and left. Appellant followed her outside and asked her to go with him between buildings so they wouldn't be seen. She presumed this was because it was late and there were camp rules forbidding being in a person of the opposite sex's room after 10:00 p.m. AN agreed and, when they were out of sight, Appellant told AN that he wanted them to be together. When she appeared skeptical, Appellant grabbed AN's hand and put it on the outside of his pants over his penis to demonstrate to her his claim that he was not sexually aroused by her.

When AN got back to her quarters she texted a fellow soldier, Sergeant Rolf, and told him she had been sexually assaulted.

The following morning AN exchanged a series of text messages with her mother about what had happened saying she thought she had been sexually assaulted. AN then reported the violation to military law enforcement. The Navy Criminal Investigative Service (NCIS) conducted a videotaped interview with AN. She later gave a written statement to the Army Criminal Investigation Division (CID).

After reporting the incident and at the suggestion of the investigators, AN engaged in a series of emails with Appellant. Appellant wrote that "[I] didn't know if I crossed

the line with you the other night." When AN asked him whether he thought he had crossed the line, he responded "Yea" and apologized to her if he did. Appellant also told a fellow soldier that he had been out with AN and " 'there may have been a mistake one night.' "

At trial, the defense argued that AN had lied about the abusive sexual contact from the start. During cross-examination, the defense questioned AN about how extensively she had prepared with trial counsel, including how many times they went over her testimony and whether they reviewed her videotaped interview and text messages.

The Government sought to admit AN's text messages to her mother and her videotaped interview with NCIS as prior consistent statements under M.R.E. 801(d)(1)(B) to counter the implication that she had been improperly prepared by the prosecution.[3] The military judge admitted the text messages (P.E. 4) under M.R.E. 801(d)(1)(B)(i) and the videotaped interview (P.E. 14) under M.R.E. 801(d)(1)(B)(ii), both over defense objection. Both were redacted to remove material the parties and the military judge considered irrelevant.

## II. Standard of Review

A military judge's decision to admit evidence is reviewed for an abuse of discretion. *United States v. Frost*, 79 M.J. 104, 109 (C.A.A.F. 2019). "A military judge abuses his discretion when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *Id.* (internal quotation marks omitted) (citation omitted).

## III. Applicable Law

As a general rule, hearsay, defined as an out of court statement offered into evidence to prove the truth of the matter asserted, is not admissible in courts-martial. M.R.E. 801(c); M.R.E. 802. Military Rule of Evidence 801(d)(1)(B)

---

[3] Initially the Government sought to admit AN's written statement to CID as Prosecution Exhibit (P.E.) 6 but when the military judge found the videotaped interview cumulative with the written statement, the Government withdrew the written statement.

provides an exception to hearsay for prior consistent statements made by a testifying witness if the statement is consistent with the witness's testimony and is offered:

> i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or

> ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground.

The proponent of the evidence, in this case the Government, has the burden of demonstrating that the evidence is admissible. *United States v. Finch*, 79 M.J. 389, 394 (C.A.A.F. 2020).

Subsection (B)(ii) of the rule is new as of 2016 and makes M.R.E. 801(d)(1)(B) consistent with the federal rule. Exec. Order No. 13,703, 3 C.F.R. § 492 (2016); Fed. R. Evid. 801(d)(1)(B)(ii). This Court recently and extensively addressed the amended rule in *Finch*. We determined that the addition of (B)(ii) to the rule did not impact statements that are admissible under (B)(i) nor did it in any way disturb our existing case law relevant to (B)(i). 79 M.J. at 395. The amendment creates "no new law with respect to the admissibility of prior consistent statements to rebut a charge of recent fabrication or improper influence or motive." *Id.* As such, this Court's precedent interpreting (B)(i) continues to apply "with full force." *Id.*

We also clarified that—because prior consistent statements had already commonly been admitted for the limited purpose of rehabilitating witness credibility—the real change ushered in by the amended rule was that such prior consistent statements can now be admitted not just for the limited purpose of rehabilitation but as substantive evidence. *Id.* at 395–96. And we added that "a prior consistent statement need not be identical in every detail to the declarant's … testimony at trial." *Id.* at 395 (alteration in original) (internal quotation marks omitted) (citation omitted). Rather, the prior statement need only be "for the most part ... consistent with respect to … fact[s] of central importance at the trial." *Id.* (alterations in original) (internal

quotation marks omitted) (quoting *United States v. Vest*, 842 F.2d 1319, 1329 (1st Cir. 1988)).

We made it clear in *Finch* that prior consistent statements may be eligible for admission under either (B)(i) or (B)(ii) but not both. We also determined that statements admitted under (B)(ii) must be relevant to the grounds of attack:

> [F]or a prior consistent statement to be admissible under M.R.E. 801(d)(1)(B)(ii) it must satisfy the following: (1) the declarant of the out-of-court statement must testify, (2) the declarant must be subject to cross-examination about the prior statement, (3) the statement must be consistent with the declarant's testimony, (4) *the declarant's credibility as a witness must have been "attacked on another ground" other than the ones listed in M.R.E. 801(d)(1)(B)(i),* and (5) *the prior consistent statement must actually be relevant to rehabilitate the witness's credibility on the basis on which he or she was attacked.* The proponent of the evidence bears the burden of articulating the relevancy link between the prior consistent statement and how it will rehabilitate the witness with respect to the particular type of impeachment that has occurred.

*Id.* at 396 (emphasis added).

A key question in considering admission under (B)(i) is whether the prior statements came before or after the alleged motive to fabricate. As we noted in *Frost*, this Court has identified two additional guiding principles that govern admission under (B)(i):

> (1) the prior statement, admitted as substantive evidence, must precede any motive to fabricate or improper influence that it is offered to rebut; and
>
> (2) where multiple motives to fabricate or multiple improper influences are asserted, the statement need not precede all such motives or influences, but only the one it is offered to rebut.

79 M.J. at 110 (citing *United States v. Allison*, 49 M.J. 54, 57 (C.A.A.F. 1998)). If the statement occurred after the motive arose, then the declarant's consistency signifies nothing. "Statements made *after* an improper influence arose do not rehabilitate a witness's credibility." *Id.* at 111.

### IV. Analysis

Admission of Evidence

The Government originally sought to admit both P.E. 4 and P.E. 14 to counter defense insinuations that AN had been improperly prepared for trial and her testimony manipulated. Defense opened their cross-examination of AN with a series of questions about how she and the prosecution had prepared her testimony. They highlighted that AN had done four or five pretrial interviews with prosecutors and had come into the courtroom to prepare on the witness stand and that this preparation had occurred both before and after the defense interview with AN (at which trial counsel was present). Defense also asked AN whether she had prepared by going over the various exhibits with trial counsel.

The military judge initially supported the Government's interpretation of defense counsel's questions and admitted a redacted version of the text messages under (B)(i). But he later ruled that the videotaped interview could not come in under (B)(i) because the defense questions had not gone so far as to imply an improper influence, and instead allowed P.E. 14 to come in under (B)(ii).[4]

The defense argued that they had not intended to imply that the Government caused AN to change her testimony but rather that the extensive practice helped AN to keep her story consistent, so she could "tell the story better." In response to this argument, the Government proposed that AN's sworn statement[5] could still come in under (B)(ii) because defense had attacked her credibility on a number of other fronts including her prior civilian arrest, counseling for alcohol use, failure to convey to Appellant that she was not sexually interested in him, and her motives in reporting the assault.

---

[4] Our statements in this opinion should in no way indicate that it is problematic for the prosecution to prepare a witness for court-martial or that such preparation in and of itself constitutes an improper influence.

[5] Because the Government subsequently decided to admit the videotaped interview in lieu of the sworn statement we make the assumption that the arguments in favor of the later also apply to the former.

The military judge expressed some hesitancy about how to interpret (B)(ii) and what kind of evidence was admissible under this new provision. However, he ultimately determined that, although the entire videotaped interview was not admissible, the Government could admit under (B)(ii), sections of the interview that both parties agreed were relevant. However, despite having ruled that defense questions had *not* gone so far as to imply an improper influence, he did not revisit his ruling that the text messages could come in under (B)(i).

Based on the record before us, it is not necessary to decide whether or not the military erred in admitting the exhibits at issue. Even if there was error, we conclude there is no prejudice.

### Prejudice

"For [preserved] nonconstitutional evidentiary errors, the test for prejudice is whether the error had a substantial influence on the findings." *Frost*, 79 M.J. at 111 (alteration in original) (internal quotation marks omitted) (citation omitted). "In conducting the prejudice analysis, this Court weighs: (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* (internal quotation marks omitted) (citation omitted).

One aspect of this case weighing against prejudice relates to the military judge's comments on the record. The military judge mentioned on multiple occasions that he would not consider material that he did not find relevant. He went through the series of text messages between AN and her mother on the record page by page, parsing out what was consistent with AN's testimony and what he would not consider. The military judge also assured defense counsel that he would only consider the portions of the videotape relevant to (B)(ii) and made sure that both parties agreed on how the videotape should be redacted. He clarified that he would not have allowed admission of the entire tape in a members' trial because there was no way to ensure that, unlike himself, they would only consider the relevant portions. Though the military judge did not view the videotape before admitting it,

he did require that defense counsel and the Government agree to redactions that excluded irrelevant portions from consideration.[6] In addition, the military judge did not give Appellant a harsh sentence or provide any other indication he had been improperly swayed. He convicted on only two of the three specifications and took care to except specific language in one of those remaining specifications, indicating he was paying close attention to the evidence he considered.

The Government had a reasonably strong case, which included additional evidence that supported AN's version of events. Her pretext emails with Appellant in which he told her that he had crossed the line may not have provided a full admission of guilt but they revealed that he knew at the very least that his conduct had been potentially unlawful that night. He also mentioned to another soldier that he may have made a mistake with AN. In addition, AN was an overall credible witness. She did have a pattern of poor choices in her past, including drinking when the rules forbade it and shoplifting as a minor, but she was consistent on the stand regarding her interactions with Appellant on the night in question.

The defense case was not as strong. Appellant's theory that AN was concerned with her reputation around camp and with Sergeant Rolf and therefore invented the assault was based entirely on supposition. There was no physical evidence or direct testimony signaling a motive to fabricate. Sergeant JC was present in the room for part of the encounter between Appellant and AN and his testimony did contradict AN's in some respects. However, the fact that he was in and out and FaceTiming his daughter impacted his ability to observe what unfolded that night.

Lastly, the text message and interview as admitted were not significant evidence. Both repeated evidence that had come in through AN's testimony and therefore would already have been considered by the military judge. We do not consider that mere repetition of AN's story would color the

---

[6] This distinguishes the current case from *Finch,* where the military judge admitted the entire videotaped interview without viewing it first. 79 M.J. at 397.

military judge's decision and therefore have any substantial influence on the findings.

## V. Conclusion

Assuming while not deciding that the military judge erroneously admitted P.E. 4 and P.E. 14, any such error could not have prejudiced Appellant.

## VI. Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.

Judge MAGGS, concurring.

Specialist AN testified at trial that, without her consent, Appellant touched her breasts and her groin, attempted to penetrate her vulva with his finger, and forced her to touch his penis on the evening of April 17, 2016. On cross-examination, civilian defense counsel asked Specialist AN several questions about how she had met with trial counsel to prepare for her testimony in court. Trial counsel perceived that civilian defense counsel was charging, through his questions, that the Government had improperly coached Specialist AN. To rebut these charges, trial counsel sought to introduce text messages that Specialist AN had sent to her mother on the day after the incident and a video recording of Specialist AN's interview with Army investigators on the same day. The text messages and video both contained statements that were consistent with Appellant's testimony in court. The military judge admitted selected portions of the text messages and the video, over Appellant's objection that they contained hearsay, as Prosecution Exhibits 4 and 14.

Appellant challenged the admission of Prosecution Exhibits 4 and 14 on appeal. The United States Army Court of Criminal Appeals (ACCA) affirmed. Providing "belt-and-suspenders" rationales for its decision, the ACCA concluded (1) that the military judge did not abuse his discretion in admitting the evidence, and (2) that, in any event, any possible error in admitting the exhibits would not have substantially influenced the military judge's findings. *United States v. Ayala*, No. ARMY 20170336, 2019 CCA LEXIS 301, at *1, 2019 WL 3283274, at *1 (A. Ct. Crim. App. July 18, 2019) (unpublished).

Today, this Court affirms the findings and the sentence, agreeing with the ACCA's second rationale, namely, that even if an error occurred, the error did not prejudice Appellant. The Court eschews deciding whether the military judge abused his discretion. I join the Court's opinion because I concur with the Court's decision that Appellant could not show prejudice even if the military judge erred in admitting the exhibits. But I also agree with the ACCA that admitting the exhibits was not error. In my view, addressing the issue of admissibility—which is properly before us—is a higher priority here than de-

ciding the issue of possible prejudice because the issue of admissibility appears to have caused some confusion at trial and because cases involving allegations of coaching are not uncommon. *See, e.g., United States v. Norwood*, __ M.J. __, __– __ (2–4) (C.A.A.F. 2021). Explaining why the prior consistent statements were admissible in this case may aid counsel and military judges in the future more than assuming error and deciding the hypothetical question of prejudice.

The Government argues that Prosecution Exhibits 4 and 14 were admissible under Military Rule of Evidence (M.R.E.) 801(d)(1)(B)(i), which provides:

> A statement that meets the following conditions is not hearsay:
>
> > (1) *A Declarant-Witness's Prior Statement*. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
> >
> > > ....
> >
> > > (B) is consistent with the declarant's testimony and is offered:
> >
> > > > (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying.
> >
> > > . . .

M.R.E. 801(d)(1)(B)(i).[1]

This Court has recognized that the "usual" case under M.R.E. 801(d)(1)(B)(i) involves three steps. *United States v. McCaskey*, 30 M.J. 188, 192 (C.M.A. 1990). First, counsel for

---

[1] The military judge cited M.R.E. 801(d)(1)(B)(i) in admitting Prosecution Exhibit 4. Although the military judge cited M.R.E. 801(d)(1)(B)(ii) in admitting Prosecution Exhibit 14, I agree with the Government's argument that we may affirm admission of Prosecution Exhibit 14 under M.R.E. 801(d)(1)(B)(i) if the record demonstrates that the elements of that provision are satisfied. *See United States v. Leiffer*, 13 M.J. 337, 345 n.10 (C.M.A. 1982) (explaining that this Court can affirm admission of evidence on a ground not cited by the military judge because " 'the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason' " (quoting *Helvering v. Gowran*, 302 U.S. 238, 245 (1937))).

one party (Party A) calls a witness who provides helpful testimony. Second, counsel for the other party (Party B) insinuates through cross-examination or otherwise that the witness recently changed his or her story. Third, counsel for Party A then attempts to rebut Party B's charge by introducing an earlier consistent statement by the witness for the purpose of showing that the witness's story has not in fact changed. Under M.R.E. 801(d)(1)(B)(i), the prior consistent statement is not considered hearsay. *See, e.g.*, *United States v. Allison*, 49 M.J. 54, 57–58 (C.A.A.F. 1998) (prior consistent statements in a videotaped interview with a social worker were admissible to rebut the appellant's charge that trial counsel subsequently shaped the testimony that a witness gave at trial).

Appellant, however, contends that this case is different from the usual example described above and that M.R.E. 801(d)(1)(B)(i) does not apply. Appellant argues that the defense theory was that Specialist AN's motive to lie about what happened arose before she reported the assault to anyone. Appellant asserts: "While the prosecution made much to do about the defense inquiring into her pretrial preparation, the defense never insinuated that her story had changed in that time. Rather, trial defense counsel pointed to the fact that her statements were remarkably consistent." The Government responds that if the defense argued that the Government engaged in improper coaching, the Government was entitled to admit her prior statements so that the military judge could compare them with her testimony and determine if it was actually influenced by preparation. In the Government's view, it does not matter that the alleged coaching was supposedly done for the purpose of keeping the testimony consistent as opposed to causing the testimony to change.

I agree with the Government. M.R.E. 801(d)(1)(B)(i) does not require a charge that a witness "recently fabricated" her testimony. The rule can also apply when the charge is that a witness "acted from a recent improper influence." In this case, the defense asserted that Specialist AN's "testimony was influenced by preparation [with trial counsel] to keep it consistent" with her earlier statements, which is a charge that the witness acted from a recent improper influence. And while a prior consistent statement cannot rebut a charge that a witness has been lying from the very start, it can rebut a charge

of recent coaching. Recent coaching was the defense's argument, and as the Government explains, "Prosecution Exhibits 4 and 14 rebutted this argument because they showed [Specialist] AN's unrehearsed statements when she first reported [A]ppellant's assault, *over a year* before she allegedly practiced and rehearsed for trial." (Footnote omitted.) A prior videotaped statement can rebut an allegation that a subsequent statement was rehearsed in order to make them both consistent. *See United States v. Morgan*, 31 M.J. 43, 46 n.6 (C.M.A. 1990) (noting that there are "few media more effective than videotape for allowing the members to answer [the] question" of whether testimony was the result of improper rehearsal and coaching, "*i.e.*, telling the same story over and over again"). The prior consistent statements were therefore "relevant to rebut" the defense's charge and were not "mere repetition." *McCaskey*, 30 M.J. at 192.

Cross-examination is an important tool for exposing potential biases. But the M.R.E. are not one-sided. If counsel for a party insinuates during cross-examination that the other side has recently coached the witness, the insinuation may open the door for rebuttal by the introduction of a prior consistent statement. Under the text of M.R.E. 801(d)(1)(B)(i), a relevant prior consistent statement is excluded from the definition of hearsay not only when counsel alleges a recent fabrication but also when counsel alleges that the witness acted from any other recent improper influence or motive.