*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Nicholas L. FROST, Specialist
United States Army, Appellant

### No. 18-0362
Crim. App. No. 20160171

Argued April 9, 2019—Decided July 30, 2019

Military Judges: Michael J. Hargis and Lanny J. Acosta Jr.

For Appellant: *Robert Feldmeier*, Esq. (argued); *Captain Steven J. Dray* (on brief); *Major Julie L. Borchers.*

For Appellee: *Captain Jonathan S. Reiner* (argued); *Colonel Steven P. Haight*, *Lieutenant Colonel Eric K. Stafford,* and *Major Hannah E. Kaufman* (on brief); *Captain Jeremy S. Watford.*

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY and Judge RYAN, joined. Judge SPARKS filed a separate opinion concurring in part and dissenting in part. Judge MAGGS filed a separate dissenting opinion.

————————

Judge OHLSON delivered the opinion of the Court.[1]

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of raping his own daughter, DF, a child under the age of twelve, in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b (2012). The adjudged and approved sentence consisted of reduction to the grade of E-1, a dishonorable discharge, and confinement for ten years. Upon appellate review, the United States Army Court of Criminal Appeals (CCA) affirmed the findings and sentence.

---

[1] We heard oral argument in this case at the University of Kansas School of Law, Lawrence, Kansas, as part of the Court's Project Outreach. This practice was developed as a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

We granted review to determine whether the military judge abused his discretion by admitting hearsay statements as prior consistent statements under Military Rule of Evidence (M.R.E.) 801(d)(1)(B)(i) where the defense theory posited the improper influence or motive preceded the allegedly consistent statements. *United States v. Frost*, 78 M.J. 216 (C.A.A.F. 2018) (order granting review). We conclude that the military judge did abuse his discretion when he improperly admitted hearsay statements under M.R.E. 801(d)(1)(B)(i), and we further conclude that the Government has failed to demonstrate that Appellant was not prejudiced. Accordingly, we reverse.

## I. Background

### A. Facts

In 2000, Appellant and Ms. J. N. Moore began a relationship that lasted approximately six years. They had a son together, but their relationship ended before their daughter, DF, was born in January 2007. The breakup between Appellant and Ms. Moore was contentious, and they had disputes over custody and visitation issues involving their two children. A Georgia court awarded Ms. Moore custody of DF and her brother, but required Ms. Moore to allow the children to visit Appellant consistent with an established visitation schedule. In the summer of 2013, when DF was six years old, she and her brother traveled to spend time with Appellant who was then stationed at Fort Bliss, Texas. DF and her brother returned to Ms. Moore in Georgia on July 28, 2013.

On August 24, 2013, DF was riding in the car on the way to her grandmother's house with her brother, Ms. Moore, and Ms. Moore's boyfriend, Mr. Casey. Ms. Moore and Mr. Casey later testified at Appellant's court-martial that DF spontaneously made a statement to the effect of, "Daddy stuck his penis in my mouth." The next day Ms. Moore reported her daughter's statement to law enforcement.

On March 12, 2014, a social worker at a child advocacy center in Georgia conducted a forensic interview of DF. During the forty-minute interview, DF did not make any disclosures of abuse by Appellant. Further, DF told the

interviewer she was not afraid of anyone at either of her parents' residences.

On November 18, 2014, an interviewer at the Armed Forces Center for Child Protection conducted a forensic interview of DF. Once again, DF did not make any disclosures of abuse by Appellant.

An Article 32, UCMJ, 10 U.S.C. § 832 (2012), hearing was convened and on April 14, 2015, DF testified telephonically. Once again, she made no disclosures about any sexual abuse by Appellant.

In August 2015, Ms. Moore brought DF to five counseling sessions with Dr. Landry, a psychotherapist. Dr. Landry testified at Appellant's court-martial that her purpose in meeting with DF was to make sure "she's really focusing on going through the process of understanding her feelings and emotions and providing interventions for her to help her through that process," and that this was "primar[ily]" for "treatment purposes." Dr. Landry testified that DF experienced anxiety about seeing Appellant and anxiety about testifying at his trial. Dr. Landry also testified that DF disclosed that Appellant "tried to put his pee-wee in my mouth."[2]

On August 24, 2015, exactly two years after DF's alleged statement in the car, Ms. Moore posted the following on her Facebook profile: " 'On this day two years ago, I made a decision that would change my life.'… 'I struggled with it a week before I acted.'… 'It was the best decision, because I haven't struggled as much as I did for the four years leading up to that.' "

On September 1, 2015, DF had a telephonic interview with the prosecutors in Appellant's case. During this interview, DF once again stated that nothing sexual happened during the summer of 2013 with Appellant and that she did

---

[2] The CCA affirmed the military judge's decision that this hearsay statement was admissible under M.R.E. 803(4)'s exception for statements made for medical treatment. *United States v. Frost*, No. ARMY 20160171, 2018 CCA LEXIS 263 at *13–16, 2018 WL 2448467, at *5–6 (A. Ct. Crim. App. May 30, 2018) (unpublished).

not tell her mother that anything did happen. The court-martial proceeded nonetheless.

## B. Court-Martial Proceedings

At trial, Appellant's defense theory was that DF had been coached by her mother to accuse Appellant of rape in order to secure sole custody of DF. Defense counsel asserted in her opening statement that "this case is about what a mom will do to ensure that she does not have to share her children."

DF testified at the court-martial that nearly three years earlier "my dad put his pee-pee in my mouth." During the cross-examination of DF, the defense sought to undermine her credibility by eliciting testimony that focused on DF's repeated denials of abuse on a number of occasions.

### 1. *The M.R.E. 803(4) Objection*

During Dr. Landry's testimony, trial defense counsel objected to Dr. Landry discussing statements made to her by DF on the grounds that those statements constituted testimonial hearsay. In response, the Government argued that the statements were admissible under M.R.E. 803(4) which provides an exception to the rule against hearsay if the statement at issue is made for the purpose of medical diagnosis or treatment.[3] In support of her position, defense counsel noted that: it was law enforcement officers who referred Ms. Moore to Dr. Landry, indicating that the real purpose of the sessions was to aid the prosecution effort rather than to obtain medical treatment; Dr. Landry did not review DF's medical records but instead spoke to Ms. Moore about the allegations, investigation, and upcoming trial, again indicating that the sessions with Dr. Landry were not really for a medical purpose but instead were in furtherance of the investigation; and the timing of the counseling, which

---

[3] We denied review on the M.R.E. 803(4) issue. The purpose of this factual recitation is not to reanalyze the military judge's or CCA's M.R.E. 803(4) determination, but rather to better address the Government's claim that the defense had alleged that there was motive to fabricate involving Dr. Landry which opened the door for the Government to introduce a prior consistent statement in rebuttal to that allegation.

occurred approximately one month before the original trial date but more than two years after the alleged sexual abuse incident, indicated that the purpose was not for medical treatment.

The Government responded by stating that the defense had raised the idea "there was some conspiracy" at work here, and that:

> [the defense's] implication is that Dr. Landry [was] used as part of the investigation with the [child advocacy] center to attempt to … get something out of DF.… And defense wants to try to impute this idea that Ms. Moore is trying to get Dr. Landry to do all this stuff for her.

Defense counsel replied by saying: "I don't think that there's any conspiracy nor was defense alluding to that," and then she further clarified that her M.R.E. 803(4) argument was that law enforcement:

> made a referral because there was an allegation of alleged sexual abuse, and they wanted [DF] to talk about it. In August, when the child is not talking about it, that's when mom picks up on the referral and comes in the door to talk to Dr. Landry.…
>
> ....
>
> … [T]he purpose was getting [DF] to talk about the allegation, sir,

and not to obtain medical treatment for DF. Thus, defense counsel argued that the M.R.E. 803(4) exception to the hearsay rule should not apply in this situation.

Ultimately, the military judge ruled that DF's statement to Dr. Landry, i.e., that Appellant "tried to put his pee-wee in my mouth," was admissible under M.R.E. 803(4) because DF believed she was meeting with Dr. Landry in order to receive treatment.

## 2. *The M.R.E. 801(d)(1)(B) Objection*

At trial, Ms. Moore testified that on August 24, 2013, DF said that "her daddy had stuck his pee-pee in her mouth." Mr. Casey, Ms. Moore's then-boyfriend, testified that he recalled the phrase was "something along the lines of 'Daddy

put his pee-pee to my lips.'"[4] In response to defense counsel's hearsay objection, the Government argued that the statement was admissible under M.R.E. 801(d)(1)(B) as a prior consistent statement. Specifically, the Government told the military judge that Appellant "raised the argument that DF seeing her … therapist [Dr. Landry] has somehow influenced her testimony here today, or was used to influence her testimony, and as such, this statement made before that time period would be consistent with her in-court testimony."

In response, defense counsel emphasized the defense's position with respect to when the improper influence was alleged to have occurred.

> Sir, just to be clear: The defense's position has been, prior to this trial and throughout the trial, that Ms. Moore has put this idea in DF's head preceding the date of the statements for which she is going to testify, and has continued to use the process to include Dr. Landry to encourage the statements. But the motive to fabricate is not getting Dr. Landry to get her [sic]. The motive to fabricate is that mom dislikes my client exceptionally and does not want to share custody and would go to any length to not have to do that,

---

[4] The question before this Court asks us to consider the military judge's ruling on the admissibility of Ms. Moore's recitation of the August 24, 2013, statement as well as Mr. Casey's recitation of the same statement. During trial, the military judge heard argument from the parties on the applicability of M.R.E. 801(d)(1)(B) to the statement offered by Ms. Moore. Subsequently, the Government attempted to elicit Mr. Casey's recitation of the same statement. Defense counsel objected to the statement, arguing: "Hearsay. We're going to renew our objection. Obviously it's a different witness. We just want to make our objection noted for the record for hearsay, understanding the court's prior ruling, but for this witness." The military judge stated, "For the prior—okay. So hang on a second. Government, what's your response?" The Government responded "Yes, Your Honor. Again, this is a prior consistent statement under 801(d)(1)(B)." The military judge then overruled the defense objection. Because the parties and the military judge appear to have understood that the initial ruling was the basis for the subsequent ruling, and because no subsequent arguments were offered, we need only analyze the discussion surrounding Ms. Moore's testimony.

to include encouraging the child to make a false
allegation of sexual abuse.

(Brackets in original.) Defense counsel further argued that
the defense was alleging that Ms. Moore began coaching DF
in the "two- to three-week time gap" between DF's return to
Georgia and the date of the statement.

The military judge admitted the hearsay statement un-
der M.R.E. 801(d)(1)(B). He articulated two bases for doing
so: (1) DF's August 24, 2013, statement was consistent with
DF's testimony at trial; and (2) the statement was being of-
fered to rebut:

> the express or implied charge that the declarant
> fabricated or acted from some other recent improp-
> er influence, and I believe that's what the defense
> is trying to do, is to imply that there was a recent
> fabrication, you know, as of September—or, excuse
> me, August, that that fabrication—you know, more
> recent fabrication occurred, and therefore, that this
> statement is prior to that and is consistent with the
> statement that was made in court today.

3. *Continuation of the Defense's Theory*

After DF's August 24, 2013, statement was entered into
evidence, Appellant continued to pursue the theory that Ms.
Moore had improperly influenced DF prior to August 24,
2013. During cross-examination, defense counsel focused her
questions on the prior custody issues between Ms. Moore
and Appellant that may have created a motive for Ms. Moore
to improperly influence DF. Defense counsel also elicited the
content of the August 2015 Facebook post. In regard to the
latter point, on redirect examination Ms. Moore testified
that the Facebook message was in reference to her decision
in 2013 to break up with Mr. Casey. However, Mr. Casey
later testified that he and Ms. Moore did not break up until
two years later in the fall of 2015. In closing argument, the
defense argued that Ms. Moore had a history of dishonesty
and her testimony was inconsistent and unbelievable.

## II. Applicable Law

This Court reviews a military judge's decision to admit
evidence for an abuse of discretion. *United States v. Humph-
erys*, 57 M.J. 83, 90 (C.A.A.F. 2002). "A military judge abus-

es his discretion when his findings of fact are clearly errone-ous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Kelly*, 72 M.J. 237, 242 (C.A.A.F. 2013) (citation omitted) (internal quotation marks omitted). Findings of fact are "clearly erro-neous" when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *United States v. Martin*, 56 M.J. 97, 106 (C.A.A.F. 2001).

Hearsay is generally not admissible in courts-martial. M.R.E. 802. However, a prior consistent statement is "not hearsay." M.R.E. 801(d)(1)(B). From the plain language of the rule, we derive three criteria for the admission of prior consistent statements: (1) the declarant of the statement must testify and must be subject to cross-examination about the prior statement; (2) the statement must be consistent with the declarant's testimony; and (3) the statement must be offered "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent im-proper influence or motive in testifying." M.R.E. 801(d)(1)(B)(i).

In addition, this Court has recognized two additional guiding principles as governing the admission of a prior con-sistent statement: (1) the prior statement, admitted as sub-stantive evidence, must precede any motive to fabricate or improper influence that it is offered to rebut; and (2) where multiple motives to fabricate or multiple improper influ-ences are asserted, the statement need not precede all such motives or inferences, but only the one it is offered to rebut. *United States v. Allison*, 49 M.J. 54, 57 (C.A.A.F. 1998) (cit-ing *United States v. Faison*, 49 M.J. 59 (C.A.A.F. 1998); *United States v. Taylor*, 44 M.J. 475, 480 (C.A.A.F. 1996); *United States v. Morgan*, 31 M.J. 43, 46 (C.M.A. 1990); *Unit-ed States v. McCaskey*, 30 M.J. 188, 192 (C.M.A. 1990)).

### III. Analysis

There is no dispute that: DF testified and was subject to cross-examination; the August 24, 2013, statement was sub-stantively consistent with DF's testimony at trial; and the August 24, 2013, statement occurred prior to DF's counsel-

ing sessions with Dr. Landry. *See* M.R.E. 801(d)(1)(B)(i)–(ii). Thus, the pivotal issue in this case is whether DF's statement in the car was "made before any … of the motives to fabricate or improper influences asserted by the defense arose." *Allison*, 49 M.J. at 57.

The military judge found that the defense had alleged the improper influence occurred in August 2015 during Dr. Landry's counseling sessions with DF. An appellate court may not find an abuse of discretion if the court's conclusion is that the military judge was "maybe wrong or probably wrong." *United States v. Byrd*, 60 M.J. 4, 12 (C.A.A.F. 2004) (Crawford, C.J., concurring in the result). Instead, an appellate court may only conclude that findings of fact are clearly erroneous when the reviewing court "is left with the definite and firm conviction that a mistake [by the trial judge] has been committed." *Martin*, 56 M.J. at 106. Here, our review of the record leaves this Court with such a conviction. In sum, an examination of defense counsel's opening statement, cross-examination of Ms. Moore and Dr. Landry, and colloquy with the military judge all clearly establish that the military judge's finding is unsupported by the record.

Defense counsel gave a short opening statement advancing but one suggestion of improper motivation: that Ms. Moore improperly influenced DF into making a false sexual assault allegation against Appellant because Ms. Moore was motivated by the desire to gain sole custody of DF. Defense counsel followed up on that theory by cross-examining Ms. Moore about the contentious nature of her breakup with Appellant and about the prior custody issues between them that resulted in Ms. Moore being found in contempt of court.

Defense counsel also elicited testimony that there was a three-week period between DF returning from Texas and her statement in the car. Defense counsel further questioned Ms. Moore about her August 24, 2015, Facebook post, wherein Ms. Moore revealed that she had struggled with a decision that would change her life the week before August 24, 2013—the date that DF made her allegation against Appellant. Read together, defense counsel's opening statement and cross-examination of Ms. Moore were clearly designed to drive home to the military judge the defense theory that Ms. Moore had a motive to improperly influence DF that arose

prior to DF's statement on August 24, 2013, that Ms. Moore struggled for a week prior to DF's statement about whether to exert that influence, and that Ms. Moore ultimately decided to do so, resulting in the then-six-year-old DF making a false allegation against her father.

Despite the assertion by the Government and the finding by the military judge, we do not find support in the record for the notion that Appellant alleged an improper influence occurred during the August 2015 counseling sessions with Dr. Landry. On the contrary, defense counsel's cross-examination of Ms. Moore only mentioned Dr. Landry a single time. This occurred when defense counsel, after questioning Ms. Moore about several of DF's denials of abuse, asked: "And then you continued to take DF to visit Dr. Landry, didn't you?" Likewise, during the defense's cross examination of Dr. Landry the only allusion to potential improper influence was focused on *Ms. Moore's* influence over DF, and came when defense counsel asked whether children repeat stories of abuse told by adults and whether DF could have been afraid of Appellant "because of things her mother told her."

Our review of the record demonstrates that during the M.R.E. 803(4) objection to Dr. Landry testifying about DF's statements during counseling, defense counsel argued only that DF's statement to Dr. Landry did not qualify for the medical hearsay exception because the true purpose of the counseling sessions was trial preparation, not treatment. To the extent the military judge conflated the allegation of improper influence on DF by Ms. Moore and the trial preparation assistance of DF by Dr. Landry, defense counsel's clarification was more than adequate to clear up any confusion:

> Sir, just to be clear: the defense's position has been, prior to this trial and throughout the trial, that Ms. Moore has put this idea in DF's head preceding the date of the statements for which she is going to testify, and has continued to use the process to include Dr. Landry to encourage the statements. But the motive to fabricate is not getting Dr. Landry to get her [sic].

(Brackets in original.)

Reading the record in its entirety, it is clear that the defense's sole theory and line of approach during opening statement, questioning, and closing argument at the court-martial was that Ms. Moore, motivated by a desire to obtain sole custody of her children, exerted an improper influence on DF prior to DF's August 24, 2013, remark. Statements made *after* an improper influence arose do not rehabilitate a witness's credibility. *See McCaskey*, 30 M.J. at 192. Therefore, the military judge made a clearly erroneous finding of fact when he determined that the defense had alleged that Dr. Landry exerted an improper influence on DF in August of 2015. Moreover, based on that clearly erroneous finding, the military judge's decision to admit DF's August 24, 2013, statement was outside the range of choices reasonably arising from the law and the applicable facts. *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015).

This does not end our inquiry however. We now must determine whether this error prejudiced Appellant. *See* Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2012). "Importantly, it is the Government that bears the burden of demonstrating that the admission of erroneous evidence is harmless." *United States v. Flesher*, 73 M.J. 303, 318 (C.A.A.F. 2014). "For [preserved] nonconstitutional evidentiary errors, the test for prejudice is whether the error had a substantial influence on the findings." *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019) (citation omitted) (internal quotation marks omitted). "In conducting the prejudice analysis, this Court weighs: (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* (citations omitted) (internal quotation marks omitted).

We conclude that the Government has not met its burden. First, the Government's case was weak. DF did testify at trial that Appellant had sexually abused her, but the credibility of this allegation was called into serious question not merely because of Ms. Moore's asserted improper influence on DF when DF was just six years old, but also because of DF's multiple denials of abuse to a series of different people representing several different institutions over an ex-

tended period of time.[5] Specifically, DF's denials were made not only to the Article 32, UCMJ, investigating officer and to the prosecutors themselves, but also to personnel at a child advocacy center in Georgia and to personnel at the Armed Forces Center for Child Protection. Moreover, the Government presented at trial no forensic evidence, no other direct witnesses, and no evidence of previous "grooming behavior" by Appellant.[6]

Second, the defense presented a fairly robust case on behalf of Appellant. Defense counsel was able to elicit that Ms. Moore had been dishonest in the past and had a clear and

---

[5] In his separate opinion, Judge Sparks argues that the strength of the defense's case "was undercut by Dr. Landry's testimony that children regularly are unwilling to tell people about trauma due to fear, shame, anxiety or depression." However, we note that Dr. Landry's testimony also supported the defense's case on a closely related point. Specifically, during cross-examination defense counsel elicited testimony from Dr. Landry that children "repeat stories that adults tell them of abuse." Moreover, to the extent that fear inhibited DF during her forensic interviews, defense counsel introduced evidence that during her November 18, 2014, forensic interview "Miss DF did not make any disclosures of abuse against Specialist Frost. Miss DF stated that she was scared to talk during her prior interview, *but was not scared during this interview*." (Emphasis added.)

[6] In his separate opinion, Judge Sparks states that the strength of the Government's case was bolstered by the fact that "DF described Appellant's penis as 'having a little circle around it.'" He concludes that Appellant's piercing "was something [DF] likely would have only known [about] if she had seen it." We note that, DF could have learned about Appellant's piercing from Ms. Moore when Ms. Moore improperly influenced DF into making a rape allegation against Appellant, as argued by defense counsel at trial. Moreover, DF's description of Appellant's penis as having "a little circle around it" is inconsistent with Ms. Moore's own testimony that Appellant had a piercing that consisted of two loops the size of pencil erasers which extended from the underside of Appellant's penis. The nine-year-old's incorrect description of this piercing brings into question whether she was testifying about something she had *seen* or something she had been *told about* three years earlier.

compelling motive to improperly influence her six-year-old daughter into making a false allegation against Appellant.[7]

And third, the materiality and quality of the improperly admitted evidence was likely substantial because it went to the heart of the matter in dispute: whether Appellant raped his daughter. Indeed, the Government made it clear that it introduced the improperly admitted evidence in order to bolster the credibility of the allegations that DF made from the witness stand.

In light of these facts, we conclude that the Government failed to establish that the improperly admitted evidence did not have a substantial influence on the military judge's guilty findings. Therefore, the Government did not meet its burden in establishing that Appellant was not prejudiced.

## IV. Decision

The decision of the United States Army Court of Criminal Appeals is reversed as to Specification 2 of the Charge. The findings for this charge and specification are set aside. The sentence is also set aside. A rehearing is authorized.

---

[7] The CCA's determination that Mr. Casey was credible, *Frost*, 2018 CCA LEXIS 263, at *6–7, 2018 WL 2448467, at *3, is of little consequence because the fact that Mr. Casey heard DF utter the statement does not mean that the statement was not the product of Ms. Moore's improper influence.

Judge SPARKS, concurring in part and dissenting in part.

I agree with the majority that the military judge erred in admitting the two hearsay statements as prior consistent statements under Military Rule of Evidence 801(d)(1)(B)(i). However, because I conclude that the military judge's error did not have a substantial influence on the guilty findings, I respectfully dissent in part.

As stated by the majority, "[f]or [preserved] nonconstitutional evidentiary errors, the test for prejudice is whether the error had a substantial influence on the findings." *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019) (citation omitted) (internal quotation marks omitted). "In conducting the prejudice analysis, this Court weighs: (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* (citations omitted) (internal quotation marks omitted).

First, the Government's case was strong. The fact that DF disclosed the rape to Ms. Moore and Mr. Casey was not in dispute. In other words, the fact that two other witnesses testified that the child uttered the statement is only relevant to the question whether the statement was uttered or not. Instead, the paramount question was whether the rape occurred. DF testified that Appellant "put his wee-wee in my mouth." Furthermore, DF described Appellant's penis as having "a little circle around it." DF's identification of Appellant's penis piercing was something she likely would have only known if she had seen it. The military judge, the trier of fact in this case, assessed the child-witness's credibility and found her testimony credible.

Second, the defense case, on the other hand, was not particularly strong. The defense's theory was to show that Ms. Moore, motivated by custody and visitation problems with Appellant, had coached DF to falsely accuse Appellant of rape. Appellant's case primarily consisted of cross-examination and stipulations of expected testimony. This evidence showed that over a period of years, DF omitted or denied that Appellant had raped her. However, the defense's case was undercut by Dr. Landry's testimony that children regularly are unwilling to tell people about trauma due to fear, shame, anxiety, or depression. Again, the military

judge was best situated to assess the defense efforts to impeach the child-witness and concluded those efforts were insufficient.

Ultimately, I find no prejudice based largely on the third and fourth factors. The improperly admitted hearsay statements were not material, as this evidence was cumulative of evidence already testified to at trial. Without objection, DF testified that she told Ms. Moore and Mr. Casey about what occurred with Appellant. The improperly admitted hearsay statements added insignificant detail beyond the unobjected-to testimony by DF. In light of the overlap in testimony, I am persuaded that the improperly admitted hearsay statements were not qualitatively significant and could not have prejudiced Appellant's case.

Accordingly, I conclude the Government has met its burden of demonstrating that the improperly admitted hearsay statements did not have a substantial influence on the guilty findings in this case. Therefore, I respectfully concur in part and dissent in part.

Judge MAGGS, dissenting.

Military Rule of Evidence (M.R.E.) 802 makes hearsay generally inadmissible. But M.R.E. 801(d)(1)(B) excludes from the definition of hearsay statements that are consistent with testimony at trial and offered to rebut charges that the testimony was recently fabricated or the product of an improper motive or influence. At the time of trial, M.R.E. 801(d)(1)(B) provided in relevant part:

> A statement that meets the following conditions is not hearsay:
>
> (1) A Declarant-Witness's Prior Statement. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
>
> ....
>
> (B) is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying.[1]

In this case, DF testified at trial that Appellant put his penis in her mouth. Trial counsel subsequently perceived that civilian defense counsel, through her questions and argument, had expressly or impliedly charged that during counseling sessions in August 2015, Dr. Karen Landry had improperly influenced DF so that she would make this accusation against Appellant. To rebut this charge of improper influence by Dr. Landry, trial counsel sought to introduce evidence of a consistent statement made by DF in the summer of 2013 before she met Dr. Landry. Civilian defense counsel objected on grounds of hearsay. Trial counsel told the military judge that the Government was seeking to admit the 2013 statement as non-hearsay under M.R.E. 801(d)(1)(B) on the basis that it "pre-dated the potential mo-

---

[1] The version of M.R.E. 801 in the *Supplement to Manual for Courts-Martial, United States, Military Rules of Evidence* (2012 ed.), applies to this case because the court-martial occurred in March 2016. The President subsequently made an amendment to M.R.E. 801(d)(1)(B) in the *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*).

tive to fabricate involving Dr. Landry." The military judge admitted the 2013 statement on this basis. Civilian defense counsel later renewed the objection but the military judge overruled the renewed objection.

The question in this case is whether the military judge abused his discretion in deciding that DF's 2013 statement was admissible because it was not hearsay under M.R.E. 801(d)(1)(B). *See United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002) (a military judge's admission of evidence is reviewed for abuse of discretion). The Court today concludes that the military judge abused his discretion in admitting the 2013 statement because the Court cannot "find support in the record for the notion that Appellant alleged an improper influence occurred during the August 2015 counseling sessions with Dr. Landry." *United States v. Frost*, __ M.J. __ (10–11) (C.A.A.F. 2019). I respectfully disagree with this conclusion.

Attacks based on improper influence or motive are not always made directly and expressly. Instead, an opposing party sometimes makes such attacks by "implication or innuendo" and sometimes relies on the "suggestive force of questions or underlying facts to carry the message, in which case the charge is implied." 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:39, at 341 (4th ed. 2013). As an example, if a mother testifies in a case in which her son faces criminal charges, the prosecutor might expressly attack her testimony as being influenced by an improper motive by asking a question such as: " 'You would do anything you could to help your son, wouldn't you?' " *Id.* at 341–42 (citing Michael Graham, *Prior Consistent Statements: Rule 801(d)(1)(B) of the Federal Rules of Evidence, Critique and Proposal*, 30 Hastings L.J. 575, 586, 607 (1979)). Alternatively, the prosecutor might attack her testimony impliedly—but equally effectively—with the more subtle question: " 'You are the mother of the defendant, aren't you?' " *Id.* at 342.

Because an opposing counsel's attacks on a witness's testimony can be implied, and because only attacks that go to recent fabrication, or improper influence or motive (as opposed to attacks that address other problems such as mistaken memory) can be rebutted with a prior consistent

statement, a military judge faces a difficult burden in applying M.R.E. 801(d)(1)(B). "[W]hether any given attack indicates fabrication, influence, or motive turns on the nature of the attack, the purpose of the attacking party, surrounding circumstances, and the interpretation put on them by the court." 4 Mueller & Kirkpatrick, *supra* p. 2, § 8:39, at 345. Because of this burden, appellate judges must afford considerable deference to a military judge's assessment of whether a party has made a charge of improper motive. *United States v. Lozada-Rivera*, 177 F.3d 98, 104 (1st Cir. 1999) (giving "deference to the trial court's finding as to whether counsel has implied during questioning that a witness has a motive to fabricate"); *United States v. Frazier*, 469 F.3d 85, 89 (3d Cir. 2006) (holding that the trial judge has discretion to determine whether a conscious alteration of testimony has been made); 4 Mueller & Kirkpatrick, *supra* p. 2, § 8:39, at 345 ("Not surprisingly, judges have broad interpretive discretion" in deciding what kind of an attack on testimony has occurred.).

In my view, consistent with these deferential standards, the military judge in this case could have concluded for several reasons that civilian defense counsel had expressly or impliedly charged that Dr. Landry had improperly influenced DF during her counseling sessions. I review these reasons with detailed quotations from the record because while "a charge of improper motive or recent fabrication need not be expressly made or buttressed by concrete evidence," it is still necessary to "point to specific questions during his adversary's examination that suggest recent fabrication or bias." *Lozada-Rivera*, 177 F.3d at 104.

First, civilian defense counsel asked cross-examination questions to establish that, before DF began meeting with Dr. Landry, DF on two significant occasions had declined to accuse Appellant of misconduct. For instance, in cross-examining DF, civilian defense counsel asked DF to confirm that she had denied that any abuse had occurred during a conversation on March 12, 2014 with a forensic interviewer named Allison Boynes:

> Q. . . . And you told her [Ms. Boynes] nothing happened at your dad's house that summer, right?
>
> A: I think so.

Civilian defense counsel also asked DF to confirm that DF had denied any abuse occurred during telephonic testimony at the Article 32, UCMJ, 10 U.S.C. § 832, hearing on April 14, 2015:

> Q. . . . And when you were answering those questions on the phone for that Army officer, you told him that nothing bad happened at your dad's house, correct?
>
> A. I think so.

In my view, the military judge had discretion to decide that civilian defense counsel, through these questions, was implicitly arguing that DF changed her story after she spoke to Dr. Landry because Dr. Landry somehow improperly influenced her.[2] *See United States v. Red Feather*, 865 F.2d 169, 171 (8th Cir. 1989) (upholding admission of a prior consistent statement because "[t]he defendant had implied on cross-examination that [the complaining witness in a child sexual abuse case] had been coached by the social services counselors"); *see also United States v. Baron*, 602 F.2d 1248, 1253 (7th Cir. 1979) ("The jury might well have inferred that [recent fabrication] was what one defense counsel was suggesting from his emphasis at the beginning of his cross-examination on the fact that [the witness] had never [previously] implicated defendant.").

Second, civilian defense counsel also used cross-examination to show that Dr. Landry had the knowledge necessary to exert improper influence over DF during the counseling sessions. Civilian defense counsel asked Dr. Landry to confirm that she had obtained background information regarding the allegation of abuse from sources other than DF. In response to civilian defense counsel's question-

---

[2] After the military judge made his ruling under M.R.E. 801(d)(1)(B), civilian defense counsel introduced a stipulation of expected testimony in which the parties agreed that if Appellant's current wife were present and testifying at trial, she would testify that DF had not mentioned any abuse in June and July of 2013 when the abuse allegedly occurred. While this stipulation did not influence the military judge's M.R.E. 801(d)(1)(B) ruling, introduction of the stipulation tends to confirm that civilian defense counsel's strategy was to suggest that DF changed her story after speaking to Dr. Landry.

ing, Dr. Landry testified: "Normally, when people come in to the sexual assault center, we pretty much have all of that information, because they've already talked to, like, probably eight people before they've talked to me, and I can just pull the information." A possible implication is that Dr. Landry used this information to influence what DF subsequently said about the abuse. Lest the military judge miss the point, civilian defense counsel followed up by asking Dr. Landry pointed questions along the following lines:

> Q. Some children make up stories of abuse?
>
> A. Yes
>
> Q: Some children repeat stories that adults tell them of abuse?
>
> A. Yes

Civilian defense counsel did not specifically name any adults who might have told DF stories about abuse. But in my view, the military judge had discretion to conclude that civilian defense counsel was insinuating that Dr. Landry was at least one adult who had improperly influenced DF.

Third, when the military judge was considering whether DF's statements to Dr. Landry were admissible under the medical treatment exception to the hearsay rule in M.R.E. 803(4), civilian defense counsel made arguments suggesting that Dr. Landry had asserted an improper influence over DF. Civilian defense counsel asserted that Dr. Landry was "preparing the child's statements for the purpose of trial," and "in furtherance of the investigation." Civilian defense counsel further questioned the purpose of Dr. Landry's counseling sessions by asking rhetorically, "when there's no outcry during the process, then there would seem to be no reason why we would need to get [DF] to talk about the alleged abuse." Although civilian defense counsel made these arguments in the context of a dispute about M.R.E. 803(4), and may not have intended the arguments to influence the military judge's decision about whether DF's 2013 statement was admissible under M.R.E. 801(d)(1)(B), the military judge still had discretion to conclude that the arguments insinuated that Dr. Landry had improperly influenced DF. *See Baron*, 602 F.2d at 1253 ("The fact that defense counsel may not have intended to imply that [defendant's] story was fab-

ricated [recently] is irrelevant if that inference fairly arises from the line of questioning he pursued.").

Appellant's apparently strongest argument for concluding the opposite—that civilian defense counsel *did not* insinuate that Dr. Landry had improperly influenced DF—is civilian defense counsel's statement to the military judge: "Sir, just to be clear: The defense's position has been, prior to this trial and throughout the trial, that Ms. Moore has put this idea in DF's head preceding the date of the statements for which she is going to testify, and has continued to use the process to include Dr. Landry to encourage the statements." In this statement, civilian defense counsel certainly accuses DF's mother of exerting improper influence over DF.[3] But as the Government points out, the last clause of the statement also implicates Dr. Landry in improper influence.

For these reasons, the military judge could decide that the elements of M.R.E. 801(d)(1)(B) were met, and that the Government could introduce a prior consistent statement to rebut civilian defense counsel's implied charge that Dr. Landry had improperly influenced DF. This conclusion does not mean that Dr. Landry intended to influence DF improperly or actually did influence her improperly. It simply means that the military judge did not abuse his discretion in admitting DF's 2013 statement. Because

---

[3] In other statements, civilian defense counsel charged that DF's mother began her improper influence of DF before DF made the 2013 statement. This charge of improper influence by DF's mother did not open the door for the Government to introduce the 2013 statement because a consistent statement must predate the improper influence to be admissible under M.R.E. 801(d)(1)(B). *See Tome v. United States*, 513 U.S. 150, 167 (1995). But the charge against DF's mother also did not prevent the Government from using the 2013 statement to rebut the implied charge that Dr. Landry had improperly influenced DF. As this Court has recognized, "[w]here multiple motives to fabricate or multiple improper influences are asserted, the statement need not precede all such motives or influences, but only the one it is offered to rebut." *United States v. Allison*, 49 M.J. 54, 57 (C.A.A.F. 1998) (citations omitted).

admission of the statement was not error under the deferential abuse of discretion standard, I have no need to consider the issue of prejudice as discussed by the Court and by Judge Sparks in his separate opinion concurring in part and dissenting in part.

Accordingly, I respectfully dissent. I would affirm the judgment of the United States Army Court of Criminal Appeals.